## Walker *against* Quigg.

Q. devised as follows: "It is my will that all my estate, real and personal, shall be given to my wife: she or her attorney shall act with it according to their discretion, as far as is consistent with the children's welfare. In case she, after my decease, gets married, she shall then claim no greater a right to my estate than one of the least of my surviving children." *Held*, to be a devise to the widow, during her widowhood, as a trustee for herself and children; and that upon her marriage the trust ceased, and she was entitled to one equal share of the estate, in common with her children.

He who purchases a tract of land, knowing the title to be defective, takes the whole risk upon himself, and is not afterwards entitled to compensation for improvements made upon it: and the rightful owners may recover the land by ejectment, although they saw the improvements while being made and did not object.

An executor claiming to be the devisee of land devised by his testator, without express power in the will, sold the same, and received the purchase money, and applied

part of it to the payment of the debts of the testator. *Held*, that they who, by a proper
construction of the will, were the devisees, are entitled to recover the land from the pur-
chaser without refunding such part of the purchase money as was thus applied.

ERROR to the common pleas of *Dauphin* county.

Ejectment for nineteen acres of land. William Quigg, Rebecca
Quigg, Eliza Quigg, John Wesley and Catherine Quigg, by their
guardian, William Quigg, against Samuel Walker.

The parties claimed under the same original title. The plaintiff
gave evidence, that the land belonged to John Quigg, who died
seised thereof, leaving a widow Elizabeth and eight children, the
titles of whom were vested in the plaintiffs.

The defendant then gave in evidence the will of John Quigg,
dated the 10th of May 1824, as follows:

" Item; it is my will, and I do order and direct, that all my estate,
real and personal, (or as the case may be,) in Dauphin county, shall
be given to my beloved wife Elizabeth: she or her attorney shall
act with it according to their discretion, as far as is consistent with
the children's welfare. In case she, after my decease, gets married,
she shall then claim no greater right to my estate than one of the
least of my surviving children. It is further my desire, that in case
my wife is not able to settle the business of my estate, she shall
choose Henry Balsbaugh and Jacob Reeves to assist her in making
arrangements concerning her worldly matters. I publish and de-
clare this, and none other, to be my last will and testament."

The defendant then gave in evidence a deed from Elizabeth
Quigg to Samuel Walker, dated the 12th of May 1827, for the land
in dispute: The administration account of Elizabeth Quigg, execu-
trix of John Quigg, in which she is charged with the purchase
money of the land sold to Samuel Walker, 470 dollars, and credited
with 270 dollars, part of it not then due, and in which there was a
balance due to accountant of 632 dollars 42 cents. It was then
proved that William Walker and wife, Jane Quigg and Priscilla
Quigg, who have conveyed their interests to William Quigg, the
plaintiff, were all of age in 1827, when Samuel Walker purchased,
and that they lived near to the land, and saw and knew that the
defendant was building a house and making valuable improve-
ments upon the land, and they made no claim to it then; and that
the deed was made in the presence and at the instance of William
Walker, who conveyed to William Quigg, one of the plaintiffs.
The plaintiff then proved that Elizabeth Quigg was married before
this suit was brought, to James Yorke.

The court below (Blythe, president) instructed the jury that the
devise was to the widow, during her widowhood, in trust for her-
self and eight children, and upon her marriage the trust ceased,
and she was entitled to the one-ninth part of the land; but that the
conduct of William Walker, married to Mary, the eldest daughter,
in being present at the sale of the land to the defendant and giving
his sanction to it, was thereby deprived of his right; and that there

[Walker v. Quigg.]

was nothing else in the cause to prevent the plaintiffs from recovering the seven-eighths of the land in dispute.

Verdict and judgment accordingly.

*M'Clure*, for plaintiff in error, cited 6 *Binn.* 94; *Shep. Touch.* 439; 1 *Watts* 389; 3 *Burr.* 1684. That the defendant was entitled to recover compensation for improvements, 4 *Binn.* 31.

*M'Cormick*, for defendant in error. There is no power, under the will, to sell for any purpose. 4 *Kent's Com.* 323; 2 *Cruise's Dig. tit.* 13; *Estate in Con., ch.* 1, *pl.* 52; 2 *Stra.* 1128.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is, an exception to the charge of the court below to the jury, in giving a construction to the will of John Quigg, deceased, against the plaintiff in error's claim to the land in dispute, under which will both parties claimed the land. We are of opinion that the court were right in their construction of the devise to the wife of the testator, and the authority given by the will to her over his land or real estate. The intention of the testator, as disclosed by the terms of the will itself, must govern and rule the construction of it, seeing that it does not appear that the testator intended any thing contrary to law. It is pretty clear that he did not intend to invest his wife with a fee simple estate in the whole of the land; for, although he gives her or her attorney authority to act with the estate according to their discretion, yet he very distinctly limits and restrains the exercise of the power and discretion given, in two respects; which shows clearly that he neither intended to give her a fee in the land, nor yet the power to sell and dispose of it. First, the estate was to be *acted* with; that is, *managed*, as I take it, by her, so far as should be consistent with the *welfare* of his children: in other words, for the *benefit* of the children, jointly with herself. That she was to have a joint interest or an equal interest, in common with the children, from the first, is plainly inferable from the provision expressly made in her favour in case of her subsequent marriage: for it cannot be reasonably supposed that he intended to increase her interest in the estate upon that event; nor do I think, from the tenor of the will, that it was his design to curtail it, but merely to take from her the care and management of the estate, so far as the children's interests were concerned in it. Beside, had the testator intended to have vested her with the fee, his authorizing her to act in regard to the estate by *attorney* would have been wholly unnecessary, and, as it appears to me, would have been so considered by the most simple and ignorant man in being, having sufficient capacity to dispose of his estate by will. It is only necessary to give an authority to act by attorney where a mere *naked power* is conferred, without any interest or estate whatever. In the second place, the power given to

VI.—M

[Walker v. Quigg.]

the widow over the whole estate was only to be exercised by her as long as she should remain unmarried; at the end of which period she was to have a child's share, and such power only as should necessarily be connected with that interest or share in the estate. There being eight children, her portion in the whole estate was therefore restricted to one equal undivided ninth part thereof. It is plain, therefore, that the testator could not, at most, have intended to do more than make his wife a trustee of the whole estate during her widowhood, for the purpose merely of taking care of and managing it for the benefit of herself and the children: but if she married, then the trust was to determine, and her authority over the estate was to be at an end, so far as regarded the interests of the children therein. The testator doubtless thought that the subsequent marriage of his wife would at least interfere with her power, if not her inclination, to manage and use the estate for the welfare and benefit of his children, in the way he wished, and therefore was unwilling that she should be entrusted with it longer.

It is contended, however, that though she may not have been invested by the will with the title to the whole estate in fee, yet she had the power given to her during her widowhood, to sell and convey the land in fee. But, unless such power be plainly given by the will, or otherwise necessary to be exercised, in order to carry the express provisions thereof into effect, it can not be considered as thereby granted. It is perfectly obvious, that in terms no such is given by the will: and it is equally clear, that nothing is thereby required to be done, which required the exercise of it. By the language of the will, " she and her attorney were to act with it (that is the estate) according to their discretion, as far as was consistent with the children's welfare." These are the terms in which all the power granted to her is contained, and it would certainly be going too far to say that a sale of the land is thereby either expressly or impliedly authorized. In ordinary cases, it has never been supposed that a power given to take care of a fee-simple estate in lands, and to manage the same without more for the welfare of others, which is the most that was granted here, gave an authority to change entirely the character of the estate, by converting it from real into personal estate. It is evident, therefore, that the widow had no power to sell and convey in fee, more than one ninth of the land in question.

The second error is an exception to the rejection of evidence offered by the plaintiff in error. But the evidence, although rejected by the court, when first offered, was received afterwards in the course of the trial, which removes all ground of complaint on account of the rejection of it at first.

The third and last error is, that "the court erred in taking the equity of the cause, and the question of compensation to the defendant (that is, the plaintiff in error) from the jury, and deciding the fact themselves." That part of the charge of the court below, to

which this error has reference, is in the following words: " There is no equity disclosed by the defendant, either in his payment of the money, (meaning the purchase money which he paid the widow for the land,) or in making improvements in the presence of the plaintiffs, by reason of which plaintiffs should be barred of recovery, or required to make compensation to defendant." The only question raised here, is whether, admitting the facts to be true, which the testimony of the defendant below had a tendency to prove, was the charge of the court to the jury correct in regard to the law and equity growing out of them?     For it cannot be questioned that it is the province of the court, and not that of the jury, to decide all questions of both law and equity.    The facts, however, upon which questions of law and equity arise, if disputed, belong exclusively, on the trial of jury causes, to the jury, and are to be decided by them; but as to questions of law and equity when connected with the trial of issues by a jury, the latter are bound to receive their instruction from the court in regard to them. It being the duty then of the court to instruct the jury both in regard to the law and the equity of the case, we think the court below were right in advising the jury as they did on this branch of it.     The plaintiff in error must be presumed to have seen and read the will of John Quigg before he bought the land in controversy, because his deed of conveyance refers to it, and the widow pretended to have no other title to the land, or power to sell it, than what she derived from the will itself.    But having seen the will, the plaintiff in error also saw the title, and the interest which the defendants in error had under it in the land.    He therefore bought with his eyes open, and with full notice of their rights in the land, consequently, he must be considered as having taken upon himself all the risk that he might have to encounter thereafter on account of their title.    What reason then has he to complain that the plaintiffs stood by, as it were, and gave him no notice of their rights or claims to the land.    For since he knew, or at least ought to have known, which is the same thing, that they had a right to the land, he had no reason to presume or to conclude that they intended to abandon or give it up, either to him or their mother.    Indeed, it would seem as if he bought of the widow, without having even the slightest pretence for alleging now that he did it under a mistake or misapprehension of her power under the will to sell; for he called his own counsel up on the trial of the cause to prove, and he testified, too, that at the time the deed of conveyance was executed and delivered by the widow to the plaintiff in error, he expressed some doubts about the title, and that William Walker, his son, who had become the husband of one of the daughters of the testator, being present, " agreed to indemnify his father against the claim of Quigg's heirs, if there should be any difficulty about it."    By this evidence, the plaintiff in error defeated William Quigg, one of the plaintiffs below, in

[Walker v. Quigg.]

recovering the share of the wife of William Walker in the testator's estate, which he had purchased of her and her husband before commencing this action. But not content with this, he wished also to defeat all the others, unless they would first refund to him the purchase money actually paid by him for the land, and pay him also for all improvements made on it. If such a principle were to be tolerated or sanctioned, owners of lands might be in danger of being improved out of their titles and rights to them; or lose them by a stranger's selling them, unless they reimbursed the purchaser the price paid by him for them, which might happen to be the full value of them, and consequently, in such case, equivalent to a loss of the lands by the owners: and this in a case where the purchaser had notice of the real owner's rights, would be monstrous.

But, it is argued here, that the purchase money, or at least upwards of 200 dollars of it, when received by the widow, were applied by her towards paying some of the debts of the testator; and as these debts were a lien upon the land, equity requires that the defendants in error should, at least reimburse this money to the plaintiff in error. But the widow had no authority to sell the land to raise money for such purpose; and as well might it be said, that any stranger who voluntarily pays the debt of another, thereby acquires a claim in equity against the debtor, and if by any means he can get either the money or the property of such debtor into his hands, he will have a right to retain it, until he shall be reimbursed the amount of the money voluntarily paid in discharge of the debt, because by paying the debt he paid what the debtor was bound and might have been compelled to pay. Such a doctrine, if it were to obtain, would render it unnecessary for administrators or executors, to apply to the orphans' courts for authority to sell the lands of their intestates or testators, to raise money to pay the debts of their decedents, where the personal assets are insufficient for that purpose; because, if the heirs of the intestate or the devisees of the testator, after a sale of the lands by the administrators or the executors, without any authority from the orphans' court, or the will, but made for a full price, cannot recover the lands from the purchaser, without reimbursing him the purchase money paid by him, then they have in effect lost their lands. For they may as well go and buy any other lands as give a full price to get possession of their own.

Judgment affirmed.