## Swain *et al. versus* Ettling.

The common law courts have concurrent jurisdiction with the Orphans'
Court, of an action against executors to recover a claim against the estate of
the decedent.

Where a plaintiff, in an action on a promissory note, is notified that proof
of consideration will be required on the trial, and there is conflicting evi-
dence on the question of consideration, the jury are to determine from all
the evidence in the cause, whether a consideration has been satisfactorily
proved.

Where there is proof of payments and expenditures by the defendant, for
the use of the plaintiff, there arises a presumption that these were made in
discharge of the defendant's indebtedness, when the relation between the
parties is of a business character, or when there is nothing to explain the
relation between them; when, however, the relation is not that of business,
as when money is paid by a father for his son, or by a man for a mistress,
other presumptions arise; and it is for the jury to determine, under all
the probabilities of the case, whether they were intended as payments or
gratuities.

ERROR to the District Court of *Philadelphia.*

This was an action of *assumpsit* by Frances Ettling, against Wil-
M. Swain, Arunah S. Abell, and William P. Preston, executors of
Azariah H. Simmons, deceased, on two promissory notes of the
decedent, in favour of the plaintiff; one of them for $5000, dated
20th July 1847, at 12 months, and the other for $6000, dated 2d
August 1853, payable on demand. The facts of the case are very
fully stated in the opinion of the court.

On the trial, the defendants' counsel requested the court to
charge the jury as follows :—

1. That their verdict should be for the defendants, because
this court has no jurisdiction over a claim against the estate of a
decedent.

2. That plaintiff having been notified that proof of the consid-
eration of the notes in suit would be required on the trial, was
bound under the circumstances of this case to make such proof;
and if she has failed to prove to the satisfaction of the jury a val-
uable consideration for said notes, or either of them, she cannot
recover on such note or notes.

3. That even if A. H. Simmons were indebted to the plaintiff
on the said notes, or either of them, and he afterwards paid to her,
or, at her request, or with her consent, expended or invested
money for her use, such payments, expenditures, or investments

[Swain *et al. v.* Ettling.]

are presumed to have been made in discharge of his indebtedness, and not as gifts.

In answer to these points, the learned judge instructed the jury as follows :—

" As to the first point, I refuse so to instruct the jury.

"As to the second point, I answer : That there can be no recovery, unless there was a consideration ; that a consideration was necessary to give validity to the notes ; that the failure of the plaintiff to prove consideration, if she has failed, is a circumstance for you to consider, but I decline to instruct you that it is a bar to her recovery.

" As to the third point I answer : Such a presumption arises when the relation between the parties is of a business character, or when there is nothing to explain the relation between them. When, however, the relation is not that of business, as when money is paid by a father for his son, or by a man for a mistress, other presumptions arise. In the present instance, it is for the jury to decide, whether these payments were payments or gratuities, as a question of fact, upon the evidence, and upon all the probabilities of the case, as presented by the evidence."

To this charge the defendants excepted ; and a verdict and judgment having been rendered for the plaintiff for $7608, being the amount of the $6000 note with interest, and for the defendants as to the remainder of the claim, they removed the cause to this court, and here assigned for error, the answers to the points presented on the trial.

*J. E. Gowen* and *S. Hood,* for the plaintiffs in error.—The Orphans' Court has jurisdiction over an adversary claim against the estate of a decedent : Kittera's Estate, 5 *Harris* 422 ; Gochenaur's Estate, 11 *Id.* 460 ; Bull's Appeal, 12 *Id.* 286. And we contend, that this jurisdiction is exclusive : Whiteside *v.* Whiteside, 8 *Harris* 474 ; Shollenberger's Appeal, 9 *Id.* 341 ; Ashford *v.* Ewing, 1 *Casey* 215 ; Hoch's Appeal, 9 *Harris* 280 ; Warner's Estate, 2 *Wh.* 301.

The evidence imposed on the plaintiff the burden of proving consideration : *Best on Pres.* 299, 300 ; *Byles on Bills* 92 ; *Chitty on Bills,* 67 ; Lewes *v.* Morgan, 3 *Y. & J.* 230 ; 5 *Price* 83 ; Jones *v.* Thomas, 3 *Y. & Col.* 498 ; Dickson *v.* Evans, 6 *T. R.* 57 ; Rex *v.* Burdett, 4 *B. & Ad.* 140 ; Batley *v.* Catterall, 1 *Mood. & R.* 379 ; Low *v.* Burrows, 2 *Ad. & E.* 483 ; *Chitty on Bills* 650 ; 1 *Saund. Pl. & Ev.* 588.

The law presumes payments have been made in discharge of an indebtedness ; not as gratuities : *Best on Pres.* 176 ; Hammersley *v.* Knowlys, 3 *Esp.* 666 ; 2 *Stark. Ev.* 79 ; Welsh *v.* Seaborn, 1 *Stark. R.* 474 ; Casey *v.* Gearish, 4 *Esp.* 9 ; Baker *v.* Wil-

[Swain *et al. v.* Ettling.]

liamson, 4 *Barr* 469; Flemming *v.* McClain, 1 *Harris* 178; Masser
*v.* Bowen, 5 *Casey* 128; Fletcher *v.* Manning, 12 *M. & W.* 571;
Harker *v.* Conrad, 12 *S. & R.* 305; Hopkins *v.* Conrad, 2 *Rawle*
324; Seymour *v.* Sexton, 10 *Watts* 255; 1 *Chitty's Eq. Dig.* 610,
pl. 12; Hilton *v.* Burley, 2 *N. H.* 193; Wright *v.* Laing, 3 *B. &
C.* 165; Rohan *v.* Hanson, 11 *Cush.* 44; Bachman *v.* Wright, 1
*Williams (Vt.)* 478; Harrison *v.* Johnston, 27 *Ala.* 445; Stam-
ford Bank *v.* Benedict, 15 *Conn.* 437; Patterson *v.* Hall, 9 *Cow.*
747, n.; 1 *Am. Lead. Cas.* 277; Stone *v.* Seymour, 15 *Wend.*
23; *Matthews on Pres.* 103–4; Wood *v.* Briant, 2 *Atk.* 522.


*Junkin* and *J. A. Phillips,* for the defendant in error.—The
jurisdiction of the Orphans' Court is concurrent, not exclusive:
Sergeant *v.* Ewing, 6 *Casey* 75.

The burden of proving want of consideration rests on the de-
fendant: *Chitty on Bills* 69.

The answer to the defendants' third point was a clear statement
of the law: Masser *v.* Bower, 5 *Casey* 128; West Branch Bank *v.*
Moorehead, 5 *W. & S.* 542; 3 *Id.* 550; Pearl *v.* Clark, 2 *Barr*
350.


The opinion of the court was delivered by

READ, J.—This was an action of *assumpsit,* brought on the
25th February 1856, in the District Court for the city and county
of Philadelphia, by Frances Ettling, against the executors of
Azariah H. Simmons, deceased.    The declaration contained the
common counts and two special counts, one on a promissory note
of A. H. Simmons for $5000, dated July 20th 1847, and payable
twelve months after date to Frances Ettling; the other on another
note of Simmons for $6000, dated August 2d 1853, and payable
with interest to Frances Ettling, on demand, without defalcation,
for value received.    Among the usual pleas, the statute of limita-
tions was pleaded as to all the counts, except the second count on
the note for $6000.

The case was twice tried, once on the 7th April 1857, and again
on the 19th January 1858, when the jury rendered a verdict for
the plaintiff on the second count of the declaration (being on the
note for $6000), in the sum of $7608, and for the defendants on
the other counts, on which judgment was entered.

The executors filed their account in the register's office on the
3d April 1857, and the auditor was appointed by the Orphans'
Court on the 15th May 1857.

On the trial of the cause, the counsel for the defendants twice
objected to the jurisdiction of the court; once, upon the general
ground that the Orphans' Court having *exclusive jurisdiction* over
all claims against the estates of decedents, the court below had no
jurisdiction over the case; and again, upon a special offer to

[Swain *et al. v.* Ettling.]

prove, the defendants had filed their account as executors on the 3d April 1857; that a copy of that account had been duly certified to the Orphans' Court for the county of Philadelphia, on the same day; that afterwards, on the 15th day of May 1857, the said Orphans' Court appointed George Harding, Esq., auditor, to audit, settle, and adjust the first account of William M. Swain, Arunah S. Abell, and William P. Preston, executors of the last will and testament of said decedent, and to report distribution of the balance; and that afterwards the said plaintiff appeared by attorney before the said auditor, as one of the creditors of the estate of the said Azariah H. Simmons, deceased. Both objections to the jurisdiction were overruled by the court, and form the subject of the first two errors assigned.

Since the trial of the cause and the preparation of the argument of the plaintiffs in error, the case of Sergeant's Executors *v.* Ewing, reported in 6 *Casey* 75, has been decided, which disposes of both objections, upon the simple ground, that the jurisdiction of the Orphans' Court is concurrent and not exclusive, and that the creditor has a right to select the forum in which his case shall be tried.

In this case it is clear, that the plaintiff elected to pursue her remedy in a common law court, a right which was secured to her by statutory enactment.

The history of the case is a disgraceful one, both to the living and the dead. It is the story of a married woman, living as a kept mistress, with a married man, having perhaps two other wives, and, at all events, two sets of children called by his name, by two other females of the name of Simmons.

The connection was formed as early as 1847, whilst the husband of the plaintiff was in full life, and continued up to the decease of Mr. Simmons. The evidence discloses the usual extravagances on both sides, in the expenditure of money; coming, no doubt, from the funds of the keeper, who was a man of unbridled passions and of intemperate habits.

Mr. Simmons had two children by Mrs. Ettling, one born on the 9th May 1851, in the city of Philadelphia, named Albert H. Simmons; and the other born in the city of New York on the 6th March 1855, and named Frank V. Simmons.

By the will of Mr. Simmons, dated 3d April 1855, and proved 12th December in the same year, he devised and bequeathed one-fifth of the residue of his estate to each of these children, and appointed their mother their guardian; and in case of either or both dying under twenty-one, the share of the child so dying is to vest in and become the property of Frances Ettling, whom he styles the mother of his two children.

Louis Ettling went to California sometime about the beginning of 1849, and returned in the latter part of June 1852, to New

[Swain *et al. v.* Ettling.]

York, where he was met by his wife, who accompanied him to Boston, where he died, on the 12th July, of a fever contracted at Panama, on his passage home.   His wife, as his administratrix, received of the Union Bank, New York, $6000 on a draft or check, dated 26th July 1852, drawn by her in favour of the cashier of the Girard Bank, which check was deposited in that bank to the credit of Mr. Simmons.

It appears, that on the 9th July 1848, a house, No. 190 North Front street, in the city of Philadelphia, was conveyed by Henry Christman to Azariah H. Simmons in trust for Frances Ettling, wife of Louis Ettling.   The consideration was $6000, of which $3000 was paid in cash by Mr. Simmons, and a mortgage for $3000 ; which was subsequently paid by the proceeds of the policy of insurance, the house being burned in the great fire of 1850.

The house was rebuilt by Mr. John McClure, in the same year, under the order of Mr. Simmons, who paid him from time to time, sums of money amounting to $6650, and he effected an insurance on it for Mr. Simmons, as trustee.

In this house, Mr. Simmons and Mrs. Ettling lived as man and wife, and there their eldest son was born.

For some reason, not explained, Mrs. Ettling removed to New York, and there purchased a house, No. 126 West 22d Street, which was conveyed to her, being then a single woman, on the 10th October 1854.   Of the consideration-money, which was $12,000, $6357 was paid in cash, in bank bills of the Girard Bank of Philadelphia, and $5500 remained on a mortgage, which was assumed by Mrs. Ettling ; and it was shown that, on the 7th October 1854, Mr. Simmons drew $6500 from the Girard Bank.

In this house, these parties also lived as man and wife, and in it was born their second child, in the spring of the year in which its father died.   This child died after its father.

The defendants proved payments of bills by Mr. Simmons, while she resided in Philadelphia, and of drafts on him from New York by Mrs. Ettling, after her removal there, for a considerable amount, the last of them as late as the 9th November 1855.

On the part of the plaintiff, there was direct evidence of the execution of the note for $6000, and of its subsequent acknowledgment by the deceased; and it was also proved by several witnesses, that at different times, the testator declared he had in his hands a large amount of her money; and, in December 1855, just before his death, he said to a witness in the front basement of the New York house, "Theodore, I have a large amount of money of Fanny's, and think I will invest it in Third Avenue Railroad stock;" and it was testified by Dr. Quackenboss, who attended Mrs. Ettling, and afterwards their son Frank, that while making a professional visit to Mrs. Ettling, in New York, in August 1855, he met Mr. Simmons; that after getting through

[Swain *et al. v.* Ettling.]

the object of his visit, Mr. Simmons said, "Doctor, Mrs. Ettling owes you a bill for professional attendance, and if you will give it to me, I will pay it, as I have a large amount of her money in my hands." The doctor said, "Mr. Simmons, what do you call a large amount?" He replied, "I have about $16,000 of Fanny's money, and you had better let me have your bill, and I will pay it."

The plaintiff, in presenting her claim, as the statute of limitations was pleaded to a part of it, was obliged to go further than the simple *primâ facie* case of proving the two promissory notes; but as the note for $6000, which was not barred by the statute, is the only one now in dispute, our attention will be confined to that alone.

This note produced by the holder, and proved to be signed by the maker, is evidence of a contract, on good consideration, between promissor and promissee. But it is only *primâ facie evidence*, for the law holds that, as between the original parties, such proof is not conclusive; but if not rebutted or controlled by other evidence, it will stand as sufficient proof.

If, therefore, this note had stood alone, the plaintiff might have rested her case on the simple production and proof of the note; and no matter what notice had been given by the defendants, if no further evidence was offered on either side, she would have been entitled to a verdict.

The defendants then produced evidence tending to show there was no consideration given for the note, and this was met by counter evidence going to show that there was a valuable consideration to support it. The question therefore arose, on the whole evidence on both sides, whether there was a consideration for it or not; and the jury would be allowed to gather the proof from that produced by the defendants, as well as that by the plaintiff.

In this state of the case, the counsel for the defendants asked the court to charge the jury:—

"That the plaintiff, having been notified that proof of the consideration of the notes in suit would be required on the trial, was bound, under the circumstances of this case, to make such proof; and if she has failed to prove, to the satisfaction of the jury, a valuable consideration for such notes, or either of them, she cannot recover on such note or notes."

The error in this point is, in not looking at the whole case on both sides, for the consideration might have been proved by the defendants' evidence; and, therefore, independent of the generality of the expression, "under the circumstances of the case," which is clearly objectionable, it would have been erroneous to put the proposition in such language, as would have led the jury to believe, they were to look only to the proof on the part of the plaintiff, for the evidence of such failure, if any there was.

[Swain *et al. v.* Ettling.]

The answer of the judge shows that such was the construction placed by him on this point, and we believe it to be the correct one.

" On the second point," says the judge, " I answer, there can be no recovery, *unless there was a consideration*—that a consideration was necessary to give validity to the notes." This is clear, and covers the case; and he proceeds, " that the failure of the plaintiff to prove consideration, if she has failed, is a circumstance for you to consider, but I decline to instruct you that it is a bar to the recovery;" which is a proper answer, in the mode in which the defendants have framed their point, and asked the instruction of the court.

The defendants also asked the court to charge, " That if A. H. Simmons were indebted to the plaintiff, on the said notes, or either of them, and he afterwards paid to her, or at her request, or with her consent expended or invested money for her use; such payments, expenditures, or investments, are presumed to have been made in discharge of his indebtedness, and not as gifts."

This was to cover bills paid, drafts drawn, and moneys expended for a kept mistress, by whom he had two children, and whose establishments in Philadelphia and New York, in which he lived with her, were undoubtedly supported by his means. Such households are very *expensive, particularly as such connections are* generally mercenary, at least on one side.

It is certain, no such interpretation would have been given by the testator, if living, and the court was therefore right in answering, " such a presumption arises when the relation between the parties is of a business character, or where there is nothing to explain the relation between them. When, however, the relation is not that of business, as when money is paid by a father for his son, or by a man for a mistress, other presumptions arise. In the present instance, it is for the jury to decide, whether these payments were payments or gratuities, as a question of fact, upon the evidence, and upon all the probabilities of the case as presented by the evidence." This disposes of all the errors assigned.

We do not mean to say, that we should have agreed with the jury in all their conclusions from the evidence, but that was strictly their province, and it is neither the duty nor the desire of the court to invade it.

Judgment affirmed.

Woodward, J., dissented.