## Kimble, Administrator, &c., of McBride, *versus* Carothers, Administrator, &c., of Lusk.

1. Sarah Lusk and McBride lived together in his house until her death; after his death all the goods, money, &c., in the house were taken as his by his administrator; her administrator sued his in assumpsit, alleging that the money, &c., were hers, and he had taken them in his lifetime : *Held*, that although McBride's possession was originally tortious, the plaintiff might waive the tort and recover for money had and received for her use.

2. It was an action to establish a debt against McBride's estate properly brought in a common-law court, not involving any question as to the *amount* of McBride's estate within the exclusive jurisdiction of the Orphans' Court.

3. In the action by Sarah Lusk's administrator against McBride's administrator, the children of her deceased brothers and sister were not competent as witnesses under the Act of April 15th 1869, the suit being between administrators.

4. The witnesses did not claim by devolution under a deceased owner respecting his right; but from two parties whose rights were adverse.

5. Sarah was sister of Isabella, McBride's wife, who survived her and died

[Kimble *v.* Carothers.]

before McBride: *Held*, that evidence of declarations of McBride that Isabella was not his wife, were irrelevant, Sarah's administrator suing to recover *her* property.

6. A number of the Lusk brothers and sisters, including Sarah and Isabella—and McBride after his marriage—lived together on the farm of their father, until their respective deaths, intestate and without issue. Evidence of their ownership of property thirty years or more previously to Sarah's death was admissible on the question whether she owned property in the house at her death.

March 29th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Lycoming county :* Of January Term 1875, No. 184.

This was an action of assumpsit, brought November 11th 1874, by Andrew Carothers, administrator, &c., of Sarah Lusk, deceased, against Nathan B. Kimble, administrator, &c., of John McBride, deceased.

The declaration was filed January 13th 1875; it was in the common counts, and on a special count, in which the plaintiff claimed " from defendant the value of the following goods and chattels, the property of Sarah Lusk, seized and sold by the defendant as the property of John McBride ;" the goods, &c., were contained in a list in the declaration and amounted to $914; " also the following sums of money, in gold, silver and paper money, the property of Sarah Lusk," these, as contained in list in the declaration, amounted to $6857.16.

John McBride and Isabella, his wife, were murdered by Nelson E. Wade, on the 22d of July 1873; when found, Isabella was dead, John when found was insensible; he survived until July 27th, when he died. Sarah Lusk, the plaintiff's intestate and sister of Mrs. McBride, lived in the house with McBride and his wife until March 1872, when she died intestate, unmarried and without issue. These sisters were children of Patrick Lusk, who died in 1816, leaving nine children, of whom seven died before Sarah, only two of them leaving issue, most of whom were living at Isabella's death; she also died without issue. The inventory of John McBride's estate amounted to $7442.10.

Both the chattels and the money—with the exception of some found where Wade, the murderer, confessed he had hidden it—were found in the house of McBride—the money in parcels, in stockings, chests, books, &c. The claim of the plaintiff was, that most, if not all of the chattels and money, were the property of Sarah.

The case was tried February 1st 1875, before Gamble, P. J.

1. Samuel Lusk, the son of James Lusk, a brother of Sarah, who died before her, was called by plaintiff, who proposed to prove by him that his uncles John and William, and his aunts, Elizabeth and Sarah, lived from the time of their father's death until their

[Kimble *v.* Carothers.]

respective deaths, on the homestead farm, working together and keeping their property at the homestead—this, with other proof, to show what property Sarah Lusk was possessed of at the time of her death.

Defendant objected, because the witness is not competent to prove the matter offered, and it is irrelevant.

The evidence was admitted, and a bill of exceptions sealed.

The witness testified that the children of Patrick Lusk were Elizabeth, who died in 1845, Ann, who died in 1847, William, who died in 1853, Robert, who died in 1857, John, who died in 1859, Sarah, who died in 1872, and Isabella, who died in 1873, none of them leaving descendants; also, James, who died in 1845, and Ann, married to John Crydon, who died in 1872, both leaving descendants.

He said further: "Uncle John Lusk lived in the old mansion house until his death, in 1859. John farmed a portion of the old homestead farm; he and William lived in the homestead together. Aunt Elizabeth and Sarah lived down at the river on a part of the homestead farm. They both died upon the farm; Elizabeth in the well at the river, and Sarah at the old homestead house."

5. Martha Skudder, a daughter of James Lusk, was called by plaintiff, who offered to prove by her that John Lusk, William Lusk, Elizabeth Lusk and Sarah Lusk lived upon the farm of their father, Patrick Lusk, from the time of the death of their father until their respective deaths; that the said brothers and sisters were industrious and frugal, and saved a large amount of money and property, and that said money and property were kept at the homestead where they died, and were there at and after the death of Sarah; to be followed by proof that after the death of John McBride, the defendant in this case, or his administrator, took possession of all of said property as belonging to said McBride, and sold it as his administrator, and reported the proceeds in the Orphans' Court of this county.

The defendant objected, because the witness was interested in the event of this suit, and is incompetent to testify on behalf of the plaintiff; the evidence offered is irrelevant; and the defendant, as administrator of John McBride, could not be made liable in this action for the value of articles coming into his hands as administrator since the death of John McBride, at the suit of the plaintiff; and therefore the offer, so far as it is intended to prove that defendant did receive and take into his possession the money and goods mentioned in the offer, is inadmissible.

The evidence was admitted, and a bill of exceptions sealed.

Witness testified that about thirty-five years previously she lived with William and John Lusk on the homestead. Witness gave a statement of the household goods then in the house. William and Elizabeth were weavers; they wove linen plaids; they raised the flax on the farm. John and William worked together on the farm.

[Kimble *v.* Carothers.]

When they sold produce, they divided the money and put it away. She never knew them to put their money out.

Other witnesses testified in the same manner, their knowledge having been acquired about the same time.

Henry Apker testified that when McBride came into the neighborhood, between thirty and forty years previously, he hired with Elizabeth Lusk to work on the farm.

3. Plaintiff proposed to show by this witness, that the Lusk family, with whom he was living, gave notice to a tavern-keeper in their neighborhood that no liquor should be furnished McBride, and that when the tavern-keeper informed McBride of this notice, and that it was given by Isabella, that McBride denied that Isabella was his wife ; to be followed by proof that McBride did not afterwards acquire any property ; this for the purpose of showing that McBride had no property, and was of intemperate habits, and that he denied that Isabella was his wife.

This objected to by defendant, because the time referred to was too remote, and it was irrelevant.

The evidence was admitted and a bill of exceptions sealed.

Witness testified in accordance with the offer.

Samuel Smith testified that in 1840 he was working for McBride ; "Elizabeth charged McBride with trying to steal her money ; half an hour afterwards I saw her going through the fields towards her brother's ; I was sent for to help take Elizabeth out of the well ; it was down at the girls' house ; McBride told me that her brothers denied having her money and she went down and jumped into the well ; he said her money was afterwards divided between the brothers and sisters ; John and William were living at the upper house ; Sarah, Isabella and McBride at the lower house.  I left in 1847 ; have had no knowledge of the Lusk family since that time."

John Lusk, a son of James, testified as to the goods in the house, stock on the farm, &c. ; also : "I was there a few days after Elizabeth's funeral ; was there at the appraisement ; McBride said he thought the cause of her drowning was that John and William got her to take her chest of money up to their house, and afterwards refused to let her have it ; he said it was a large amount of money ; * * * it was right after her death, or within a few days ; think I had no conversation with McBride after that about that ; twelve or fourteen years before McBride's death was the last time I was there."

Elizabeth Brewer, a daughter of James, testified : "Uncle William had a white chest in the back room ; he had the lid up and went out after a drink of water, and I went in and saw lots of silver and two sacks, I could not tell what was in ; think the chest was over half full ; * * * two sacks made of home-made linen ;

31. P. F. SMITH—32

hold half a peck a piece; both full; the chest was over half full; all kinds of silver coin; I was eight years old at that time."

George W. Lusk, a son of James, testified as to the goods, &c., at the farm; also: * * * "Aunt Betsey had silver tea-spoons; butter dishes; they had considerable silver and gold there; they kept it in bureaus, cupboards and stuck all around in different places; * * *. in 1845 I lived with John McBride; was going on fifteen years then; I am speaking of twelve or fifteen years ago; John and William were both alive when I was there in 1847 visiting; it was three or six months before the death of William that I am speaking of; * * * I was there after the murder two or three days; I found the same chest I made for John McBride; it was bursted open." * * *

Doctor Gœhrig testified, "I am the coroner of the county; held the inquests over the bodies of John and Isabella McBride; went into the bedroom and in drawers found bundles of papers with money stuck in among them, and little papers with gold and silver in them. Meginness kept a memorandum of what we found the first day, $2514.25, in paper and silver generally; this we found down stairs; think there were national bank notes and West Branch Bank notes, in small packages, put around in the drawers and in crocks with garden seeds over them; up stairs there were old boxes bursted open; everything torn up; a small room, one or two beds, all covered with old trash; several old chests, forty or fifty years old from appearance; the chest was broken open and I found these old bags and stockings under the bed; there was money in them concealed in the bed; $2739.05 in the one room up-stairs; in the bureau was an old almanac with about $300 in it, that is in the $2739.05; I counted $5727.63   Sheriff Piatt took charge of it and took it to Powell & Co.'s bank."

Other persons present at and about the time of taking the inquest testified substantially as the coroner.

The defendant was called and testified that the goods found and the moneys, &c., deposited in bank passed into his hands.

4. Plaintiff offered petition of defendant, read in Orphans' Court, November 16th 1874, representing that claim had been made before the auditor, in estate of John McBride, for the claim in this suit, that the suit in this case had been commenced, and asking the court to place the case at the head of the list for trial at this term; also, order of the court endorsed on the petition and certificate from clerk of the Orphans' Court of said order filed in this case January 13th 1875.   These offered as part of the proceedings in this case, and as the acts of the defendant, and to explain why the case on trial was placed at the head of the trial list for this term, and also to explain the nature of the issue.

The defendant objected to the offer, because:—

[Kimble *v.* Carothers.]

1. Neither the petition nor the order are any part of the proceedings in this case.

2. No explanation is necessary either to court or jury of why this case was ordered to the head of the list.

3. The declaration and the pleas form the issue in this case, and they cannot be "explained" by a petition presented to the Orphans' Court.

4. The offer is irrelevant and not evidence under the pleadings.

The offer was admitted and a bill of exceptions sealed.

The petition set out that defendant, as administrator, had filed his account, which was confirmed September 2d 1874, and an auditor appointed to report distribution of the funds in his hands; at a sitting of the auditor November 11th 1874, the heirs of Sarah Lusk presented a claim for $5530.13; on the same day this action was commenced in the Court of Common Pleas to recover that sum of money; that the auditor adjourned the hearing to November 17th 1874; that the defendant was willing to pay the money in his hands to whomsoever was entitled to receive it, &c. He prayed the court to place the case in the Common Pleas at the head of the trial list for January Term 1875, and order that the defendant might employ counsel to defend the suit, the expenses to be allowed as a credit in his account.

The court made an order as prayed for, allowing counsel to be employed and directing the case to be placed at the head of the list for January Term 1875.

5. Plaintiff offered the record of amicable partition of real estate, viz.: homestead farm in Woodward township, dated April 27th 1824, being division of said farm amongst Isabella, Elizabeth, Sarah, Ann, William and John Lusk, to be followed by proof that Sarah Lusk and the other parties took possession of their respective purparts and enjoyed the proceeds of the same during life, and also on whose lands John McBride lived during his life. This offered as evidence on the question of the ownership of the personal property found on the premises after the death of McBride.

Defendants objected, because:

1. The offer is irrelevant, and title to personal property cannot be shown in the manner proposed, and the offer is to prove matters too remote.

2. Not admissible under the pleadings.

The evidence was admitted and a bill of exceptions sealed.

Under similar objections and exceptions plaintiff gave in evidence deed of Robert Lusk to Sarah Lusk, dated December 4th 1847, for his interest in Elizabeth's purpart, also devise of William Lusk of all his property, real and personal, to his brother John; also devise of John Lusk of all his property, real and personal, to Sarah Lusk and Isabella McBride; also deed of Sarah

[Kimble *v*. Carothers.]

Lusk, dated June 28th 1871, of all her real estate to John Mc-Bride and Isabella McBride for the consideration of $3000.

6. Plaintiff proposed to testify that he could find no notes or securities of the estate of decedent, and the only personalty was that taken by N. B. Kimble, administrator of McBride; also, that from the time that Sarah Lusk, conveyed her real estate to Mc-Bride and wife for the sum of $3000, in June 1871, until March 1872, the time of her death, she was sick and remained in the house occupied by McBride and by her, and being the same house in which the money and property taken by defendant were found by the coroner's jury; for the purpose of showing what personal property and money Sarah had at the time of her death, and where said money, &c., was at that time.

The defendant objected, because he could not be charged in this action upon evidence of the character offered; it was not evidence under the pleadings and was irrelevant.

The evidence was admitted and a bill of exceptions sealed.

Plaintiff said: "I was not able to find any securities or any personalty other than those found by the coroner's jury. I live about a quarter of a mile from her; knew Sarah in her lifetime; she was living in the old mansion-house at the time of her death; not able to go from the house to the barn without being helped for two years before her death."

Allison Cryder testified: "I was at the house of Sarah Lusk and McBride's; saw McBride sell hay, &c., proceeds of the farm; I saw John divide the proceeds into three shares and give Sarah and Isabella each one share and keep the third; was there last about two years before Sarah's death: I stayed all night; Sarah slept up-stairs while I was there; I saw John help her up and down while I was there; John said she had slept up there ever since she had come there and still wanted to."

Plaintiff rested.

Defendant offered to testify that after he was appointed administrator of John McBride, he had several interviews with Nelson E. Wade, who had robbed and murdered McBride and his wife; that in said interviews Wade informed him that he had taken a large amount of gold and silver from the house of McBride and had hid it so effectually that no one could find it; that he intended to give information of the place of hiding to some poor man, so that he could obtain it and not the relatives of McBride.

This for the purpose of proving that money had been taken from the house of John McBride by the said Wade prior to the death of McBride, and that the said money so taken did not come into the hands of the administrator.

The plaintiff objected, because the evidence was hearsay and irrelevant. It was rejected and a bill of exceptions sealed.

Defendant testified: "Nelson E. Wade directed us where to

[Kimble v. Carothers.]

find the bag of silver and it was by information received from him that I had the search made in the creek; a month after the robbery found the bag of silver; * * * I took possession of all the papers of John McBride that I could find at the house; I got some promissory notes payable to John McBride from Powell's; I made a thorough search of the whole house for all that I could find; I have examined all the papers; these are all the papers, except a note or two not collected, payable to John McBride; the first claim made or notice I had of any claim was before the auditor on the eleventh of November last; Messrs. Allen and Youngman (were counsel) for Lusks."

The defendant gave in evidence a bill of sale, dated June 29th 1871, from Sarah Lusk to John McBride, by which, for the consideration of $50, she sold to him "all the goods, household stuff and implements of household, and all other goods and chattels, remaining and being in the house occupied by the said John McBride."

The schedule of the articles exhibited a few articles of household furniture of small value, amounting in the whole, according to the prices affixed to each, to $50.

Defendant gave in evidence the administrator's account of the estate of Elizabeth Lusk, showing a balance of $305.78 due the estate.

After the evidence on both sides had been closed, the court, under objection and exception, allowed the plaintiff to file an amended declaration, charging, in the common counts, indebtedness by John McBride to Sarah Lusk, in her lifetime.

The court, under objection and exception, allowed the original declaration and bill of particulars to go out with the jury.

The defendant's points and the answers were:—

1. An administrator is answerable, in his official character, for no cause of action that was not created by the act of the decedent himself; the present action being brought against the defendant as administrator of John McBride, upon an alleged implied promise arising out of acts of the defendant personally since the death of John McBride, there can be no recovery in the present form of action, and the verdict must therefore be for the defendant.

Answer: "If this action is founded upon acts of the defendant personally since the death of John McBride, then the law would be as stated in this point, and the verdict must be for the defendant. But the plaintiff claims that the evidence does show that John McBride has the possession of assets belonging to the estate of Sarah Lusk, and that his estate is therefore liable to account for the same. This involves a question of fact which you must determine."

2. The plaintiff having failed to produce any evidence which

would warrant the jury in finding that any part of the money or other personal property of which John McBride died possessed, and which came to the hands of the defendant as his administrator, belonged to Sarah Lusk, the plaintiff's intestate, or that the said John McBride was liable to account to the said Sarah Lusk at the time of her death, or to her administrator since her death, for any moneys had and received by the said John McBride for the use of Sarah Lusk, he, the plaintiff, has not shown any right to recover in this action, and the verdict must therefore be for the defendant.

Answer: "The evidence is for the jury. We decline to say peremptorily that there is no evidence which would warrant the jury in finding that any part of the money or other personal property which came into the hands of defendant as the administrator of John McBride, belonged to Sarah Lusk, the plaintiff's intestate, but leave that as a question of fact for you to determine under the evidence, adding that it is incumbent on the plaintiff to establish that fact, to authorize a verdict in his favor."

3. If the jury believe, from the evidence, that the death of John McBride and Isabella his wife occurred in such a manner and was attended with circumstances such as would make the occurrence generally and extensively known; that soon after the death of John McBride letters of administration upon his estate were issued to the defendant, who proceeded to make an inventory of the property; that defendant caused search to be made in the manner testified to by him for money supposed to have been stolen and secreted; that he afterwards made public sale, at the residence of John McBride, of his goods and chattels; that he afterwards filed an account in the office of the register, charging himself, as administrator, with the money and property in dispute in this action; that his account was confirmed, without any exception, by the heirs of Sarah Lusk; and that an auditor was appointed by the Orphans' Court to distribute the balance in the defendant's hands; and if they further believe that the death of Sarah Lusk occurred two years, or thereabouts, prior to that of John McBride; and that no claim was made by the heirs of Sarah Lusk upon John McBride, in his lifetime, nor the defendant, after his death, until this action was brought, the evidence to support the demand made here must be clear and satisfactory; and the plaintiff having failed to produce any such evidence, the verdict must be for the defendant.

Answer: "We affirm this point, except the concluding clause, which assumes that the plaintiff has failed to produce any such evidence. The weight and clearness of the evidence is for the jury."

5. Upon the whole case, as presented by the evidence, the plaintiff has failed to show any right to recover, and the verdict must therefore be for the defendant.

The court refused this point.

[Kimble *v.* Carothers.]

4. The Orphans' Court of Lycoming county has exclusive authority to ascertain the amount of the property of John McBride, and to make distribution thereof, not only amongst the next of kin, but also amongst creditors; the plaintiff, therefore, cannot maintain this action, but must seek his remedy in the Orphans' Court.

The court reserved this point without answering it, and charged, * * * :—

" The controversy is one of fact chiefly; the plaintiff alleges that a portion of the money and other assets which fell into the hands of the defendant as of the estate of John McBride, belonged to the estate of Sarah Lusk, and asks a verdict for the value of the same. This is denied by the defendant, and his counsel insists that there is not sufficient proof in the cause to warrant such a verdict. There must be evidence sufficient to produce conviction upon your minds of the truth of the plaintiff's allegations to warrant a verdict in his favor. All verdicts must be founded on evidence. Juries are not at liberty to guess or judge without evidence what would be fair or equitable between parties, but of the value and weight of evidence you are the exclusive judges under the responsibility resting upon you as jurors.

" [It may not always be practicable for parties to produce proof positively and precisely defining amounts, quantities or values, yet if from an impartial consideration of all the evidence in the cause, a right of recovery is established to the satisfaction of a jury, and there is evidence from which they can substantially ascertain amounts, quantities or values, that is sufficient proof to warrant a verdict.]"

The verdict was for the plaintiff for $4900.54.

The court afterwards entered judgment as follows on the reserved point :—

" And now, to wit, February 6th 1875, the question of jurisdiction raised by the defendant's fourth point, reserved for consideration by the court, is ruled by declining to give the instruction asked for, and maintaining the jurisdiction of the Common Pleas. The issue in this case is not formed for the *purpose* of ascertaining the amount of the estate of John McBride, nor for the *purpose* of its distribution, but is the common issue in an action of indebitatus assumpsit to determine the liabilities of the decedent to this plaintiff. And although the *result* may have the effect to lessen the amount for future distribution, or to increase the claimants or distributees, that *result* is only incidental and consequential, and cannot oust the jurisdiction of the Common Pleas.

" It is therefore ordered that judgment be entered for the plaintiff on the verdict upon the payment of the jury fee."

The defendant took a writ of error, and assigned the following errors :—

1–6. The admission of evidence mentioned in the defendant's bills of exception to the plaintiffs' several offers of evidence.

7. Rejecting the offer of evidence by defendant as contained in her bill of exceptions.

8. The part of the charge in brackets.

9–12. The answers to the defendant's 1st, 2d, 3d and 5th points.

13. The answer to defendant's 4th point—the reserved point—and the entry of judgment on it for the plaintiffs on the verdict.

14. Allowing the original declaration to go out to the jury.

*H. C. Parsons* and *W. H. Armstrong* (with whom were *C. K. Geddes* and *S. Linn*), for plaintiffs in error.—A distributee is not a competent witness in the distribution of a decedent's estate as to transactions in his lifetime: Eshleman's Appeal, 24 P. F. Smith 42; Karns *v.* Tanner, 16 Id. 297; Allum *v.* Carroll, 17 Id. 68; Craig *v.* Brendel, 19 Id. 155.

The evidence of conversion was simply that after the death of McBride an examination of the premises disclosed that $5313.66, in large and small amounts, were found in numerous packages in the bureau and cupboard down stairs, and in a trunk or chest up-stairs. The whole was found in a house in the exclusive possession of John McBride. The evidence to withdraw it from his estate should be explicit and certain: Petriken *v.* Baldy, 7 W. & S. 429.

There is no proof of an actual conversion by John McBride, nor of a demand and refusal which is evidence of a conversion, and there could therefore be no recovery upon the whole case: Willet *v.* Willet, 3 Watts 277; Pearsoll *v.* Chapin, 8 Wright 9. An executor or administrator is answerable in his official character for no cause of action that was not created by the act of the decedent himself: Siep *v.* Drach, 2 Harris 356; Masterson *v.* Masterson, 5 Rawle 139.

There is no evidence from which the jury could determine the amount; the verdict was a mere guess, without any evidence that could be made the basis of a calculation. The evidence as to any items of specific property owned by Sarah Lusk, is uncertain and remote in the highest degree: Bogle *v.* Kreitzer, 10 Wright 465; 3 Phillips' Ev. 404, 417; Leigh's Nisi Prius 45.

The jurisdiction of the Orphans' Court in such a case as this is exclusive: Kittera's Estate, 5 Harris 416; Bull's Appeal, 12 Id. 286; Whiteside *v.* Whiteside, 8 Id. 473; Dundas's Appeal, 23 P. F. Smith 474; Vandyke's Appeal, 10 Id. 481.

*G. W. Youngman* and *R. P. Allen*, for defendant in error.—An objection of a doubtful nature goes to the credit only: Phillips *v.* Phillips, 8 Watts 198. Where the objection is general, the witness, if competent for any purpose, is rightly admitted: County *v.* Leidy, 10 Barr 44. To exclude a witness, he must have a cer-

[Kimble *v.* Carothers.]

tain, not a possible or contingent interest in the event of the suit : Lewis *v.* Manly, 2 Yeates 200; Fernsler *v.* Carlin, 3 S. & R. 132 ; Irvine *v.* Lumberman's Bank, 2 W. & S. 190; Scott *v.* Wells, 6 Id. 369 ; Riddle *v.* Dixon, 2 Barr 374. If a witness be interested in the question, but not in the verdict, it goes to his credit, but not to his competency : Cornogg *v.* Abraham, 1 Yeates 84 ; Thomas *v.* Brady, 10 Barr 167 ; Youst *v.* Martin, 3 S. & R. 427 ; Boyer *v.* Kendall, 14 Id. 178 ; Cornell *v.* Vanartsdalen, 4 Barr 364 ; Nass *v.* Vanswearingen, 7 S. & R. 193 ; Hays *v.* Gudykunst, 1 Jones 224. The erroneous admission of evidence by which a party could not have been prejudiced, is not cause for the reversal of the judgment : Johns *v.* Battin, 6 Casey 84 ; Bunting *v.* Young, 5 W. & S. 188.

The witnesses were competent under the first section of the Act of 15th April 1869. That act applies to all issues and inquiries by or against administrators, &c., respecting the rights of deceased owners, between parties claiming such rights by devolution upon the death of such owners. In such issues and inquiries no interest or policy of law shall exclude any *party or person :* Craig *v.* Brendel, 19 P. F. Smith 153.

Assumpsit, though in form an action on a promise, gives effect to the same principles that are administered in a bill in equity : Menges *v.* Oyster, 4 W. & S. 23 ; Lee *v.* Gibbons, 14 S. & R. 111 ; Witherup *v.* Hill, 9 Id. 11; Logan *v.* Richardson, 1 Barr 372 ; App *v.* Lutheran Congregation, 6 Id. 201.

In many cases where one has received goods wrongfully, a contract of purchase will be inferred, and the owner may waive the tort and recover for goods sold and delivered; Sitzell *v.* Triebel, 14 P. F. Smith 383 ; Deysher *v.* Michael, 3 W. & S. 331.

The jurisdiction of the Orphans' Court is not exclusive of common-law remedies against the estates of decedents; McLean *v.* Wade, 3 P. F. Smith 149; Sergeant *v.* Ewing, 6 Casey 75 ; Lewis *v.* Lewis, 1 Harris 79. The common-law courts have concurrent jurisdiction with the Orphans' Court, of an action against executors to recover a claim against the estate of a decedent : Swain *v.* Ettling, 8 Casey 486; Dyer's Appeal, 3 Grant 328 ; Musselman's Appeal, 15 P. F. Smith 480.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 8th 1876.

This was an action of assumpsit, brought in the court below by the administrator of Sarah Lusk, deceased, against the administrator of John McBride, deceased, to recover a sum of money of which it was alleged that McBride had taken possession before his death, and which belonged to Sarah Lusk. It is clear, that though McBride's possession might have been tortious originally, yet the plaintiff below had a perfect right to waive the tort and recover in

the court below for money McBride had received to the use of
Sarah Lusk. It was an action to establish a debt against the estate
of McBride, properly brought in a common-law court, and not in-
volving the necessity of determining any question as to the amount
of McBride's estate within the exclusive jurisdiction of the Or-
phans' Court: Sergeant *v.* Ewing, 6 Casey 76; Swain *v.* Et-
tling, 8 Id. 486; McLean's Ex'rs *v.* Wade, 3 P. F. Smith 146.
There was no error then in the decision of the court below, which
forms the ground of the thirteenth assignment of error.

It appeared that two brothers and four sisters, children of Patrick
Lusk, lived together upon a farm, which they had derived from
their father, who died in 1816, leaving other children as well as
other property.

The brothers and sisters all died intestate and without issue.
Sarah and Isabella survived the others. John McBride lived with
them; reputed to have married Isabella. Sarah died in March
1872. John McBride and Isabella continued to live together on
the farm until July 22d 1873, when they were robbed and both
murdered by one Nelson E. Wade, who was afterwards tried and
convicted for the crime. A considerable amount of money was
found in different parts of the house, which was taken possession
of by the administrator of John McBride. The endeavor of the
plaintiff below was to show that this money was the money of the
Lusk brothers and sisters, which they had acquired by a long
course of labor and saving—that at least a moiety of it was the
property of Sarah Lusk at the time of her death. Sarah Lusk had
purchased of her brother, John Lusk, in 1859, a farm, which, on
the 28th day of June 1871, she had conveyed to John McBride
and Isabella McBride (formerly Isabella Lusk), for the considera-
tion of $3000. Primâ facie this consideration was paid, and it was
urged that to that extent there was some evidence to sustain a
claim by the estate of Sarah Lusk upon the estate of John McBride.
In view of these facts, without referring to other details, it seemed
very clear that there was evidence proper to be left to the jury.
It is evident then that the eighth, ninth, tenth, eleventh and
twelfth assignments of error, which are all of them predicated of the
assumption that there was no sufficient evidence for the jury, must
be dismissed.

We think, however, that the first and second assignments of
error must be sustained. Samuel Lusk and Martha Scudder, chil-
dren of James Lusk, a deceased brother of Sarah Lusk, were
offered as witnesses by the plaintiff below, objected to as interested
in the event of the cause, and therefore incompetent, but the ob-
jection was overruled and the witnesses admitted. They would be
entitled, as distributees, to a share of the estate of Sarah Lusk.
They were directly interested, therefore, that the plaintiff should
recover, and prior to the Act of April 15th 1869, Pamph. L. 30,

[Kimble *v.* Carothers.]

" An act allowing parties in interest to be witnesses," were undoubtedly incompetent : 1 Greenleaf on Evid. 392, and cases there cited ; Mishler *v.* Merkle, 10 Barr 509.   It must have been supposed by the learned court below that the act referred to rendered them competent.   But this was an error.   The act declares expressly that it " shall not apply to actions by or against executors, administrators, or guardians."   It can make no difference that both plaintiff and defendant are administrators.

Even looking beyond the letter to the spirit of the act, that a living party shall not be heard to prove a claim against the estate of a decedent, who was also a party to the contract or transaction, whose lips are now sealed, the admission of these witnesses cannot be sustained.   If Sarah Lusk, when living, would not have been competent against the administrator of John McBride, neither can those who stand in her shoes, and will be entitled to a part of the money when recovered.   This was not a controversy between parties claiming by devolution under a deceased owner respecting the right of such owner.   They claimed not from one but two parties, whose rights were adverse to each other.   Neither was their evidence proposed to to be confined to facts occurring subsequently to the decease of John McBride, so as to be within the provision of the supplement of April 9th 1870, Pamph. L. 44.

We think, too, that the third assignment of error must be sustained.   It was certainly no objection to the competency of the evidence offered, that the facts occurred more than thirty years ago, and were too remote.   That might be an available ground of attacking the credibility of the witness, but that was for the jury. It was relevant to prove the intemperate habits of John McBride, but not in the way proposed,—that the Lusk family had given notice to a tavern-keeper not to trust him.   That after all was mere hearsay.   Nor was it at all relevant that McBride denied that Isabella was his wife.   The plaintiff below was suing as the administrator of Sarah Lusk, who died before Isabella, and was suing to recover her property, not derived from Isabella.   Whether Isabella was or was not the lawful wife of John McBride, was not a question relevant to the issue before the jury.

We think there was error in admitting the evidence complained of in the fourth assignment.   It was irrelevant that the claim had been made before an auditor in the Orphans' Court, and nothing to the issue why the case had been ordered to be placed at the head of the list.

We think the court were right in admitting the evidence of the partition of the farm in Woodward township, between the six brothers and sisters, and that they took possession of their respective purparts, and on whose lands John McBride lived during his life.   It had an evident bearing upon the main point, whether the money in the house belonged to the Lusks or to McBride.   So, also,

[Kimble *v.* Carothers.]

as to the sixth assignment, the evidence therein complained of being of the same character.

We think the court were right in rejecting evidence offered by the defendant of the declaration by Nelson E. Wade, the robber and murderer, of what he had taken from the house. It was, of course, mere hearsay.

As to the fourteenth and last assignment, it is disposed of by Hall *v.* Rupley, 10 Barr 231, where it was held that although a withdrawn declaration and a bill of particulars delivered under it ought not to be taken out by the jury, yet the judgment will not be reversed if the declaration is in substance the same as the one on which the cause was tried, and the bill is but a statement of the claim of which evidence was given on the trial.

Judgment reversed and a *venire facias de novo* awarded.