OSCAR L. PRINGLE v. M. A. PRINGLE, EXRX.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON
PLEAS OF CAMBRIA COUNTY.

Argued October 17, 1889—Decided January 6, 1890.

An executor, who has received no part of the assets of the estate, may sustain as an individual an action at law in the Court of Common Pleas against an acting co-executor, who has received all the assets, to charge the estate with a debt due to the plaintiff from the testator.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 186 October Term 1889, Sup. Ct.; court below, No. 390 June Term 1888, C. P.

On May 22, 1888, Oscar L. Pringle brought assumpsit against Margaret A. Pringle, " acting executrix of Wm. Pringle, Jr., deceased," to recover the sum of $500, with interest, claimed to have been loaned by the plaintiff to the defendant's testator on June 15, 1882. The defendant pleaded non-assumpsit.

At the trial on March 14, 1889, testimony was adduced as to the plaintiff's claim, when it was made to appear that Wm. Pringle, Jr., had died in the fall of 1883, leaving a will dated August 11, 1883, duly admitted to probate on October, 8, 1883; that letters testamentary were issued to Margaret A Pringle, the defendant, and Oscar L. Pringle plaintiff, named in said will as the executors thereof; that the plaintiff, though joining in the proof of the will and the receipt of the letters testamentary, had never had in his hands any of the assets of the estate, but said assets had all been received by the defendant, Margaret A. Pringle, the co-executrix.

At the close of the testimony, the court, JOHNSTON, P. J., charged the jury:

The defendant requests the court to charge:

1. That William Pringle, Jr., having by his last will and testament appointed Oscar L. Pringle, the plaintiff, and Mar-

garet A Pringle, executor and executrix, and letters testamentary having been taken out by them, and they having taken upon themselves a settlement of the estate, Oscar L. Pringle cannot recover in this action against his co-executrix, for a debt alleged to have been due to him from William Pringle, Jr., in his lifetime.

Answer: This point we are constrained to affirm, and it disposes of the whole case. They are both the representatives of the same estate; they are here, both of them, not as antagonists of the estate of William Pringle, Jr., but as its personal representatives, and they cannot divide and bring suits against each other. The action must be brought against the executors as a whole, because they represent a single interest; and, if the plaintiff entertained the idea of a controversy in the Common Pleas with the estate of his father, he should have renounced his rights to represent that estate ; or, having taken upon himself the burden of its administration, he should have resigned or been discharged from his trust before commencing proceedings antagonistic to that estate. It would result in endless confusion if two parties, who were sworn to take care of an estate as executors, were allowed to litigate the estate with each other, instead of defending it against all parties. If Oscar L. Pringle, the plaintiff here, had aught that rendered his acceptance of the trust contrary to his own interest, he was under no obligations to accept it; but here, we have them both accepting the duties of the administration, taking the oath of office to administer the estate, and thus putting themselves in a position where they cannot, as such, in a Court of Common Pleas, antagonize that estate.[2]

In a point made by the plaintiff an authority is quoted which we fully indorse, that the Common Pleas has concurrent jurisdiction with the Orphans' Court on a question of debts or liabilities of an estate, but action must be brought, not by one branch of the estate, one executor of the estate, against his co-executor. Questions of that kind are necessarily settled in the Orphans' Court, which is a court expressly for the disposition of estates, in which they can file an account, and where this plaintiff would have a right to file an account, in which he could make charges in his own favor; and the case could be settled in that court by an auditor appointed for that purpose, or oth-

erwise. That would be a competent remedy; but in the Common Pleas, while it is well ruled that it has jurisdiction, yet it must be only sub modo, that is, according to the terms as defined by the Common Pleas. In other words, the proceeding must be against the estate, including the executors of the estate; and that would be impossible in this case. If a stranger bring a suit, he cannot single out one of the executors of an estate and bring it against that one, but must bring it against the estate. The executors are only interested for the estate they represent, and not for themselves. This view of the case will compel us to take it from the jury and direct a verdict for the defendant.

We are asked to say, on the part of the plaintiff:

1. That the Common Pleas has concurrent jurisdiction of all disputed claims against the estate, with the Orphans' Court.

Answer: We assent to this proposition as a general rule. The Common Pleas may entertain actions for debt; but they must be brought against the estate, not by one executor of the estate against the other. They have general jurisdiction, but would not entertain a case brought in the form in which this one has been brought.[3]

The jury returned a verdict in favor of the defendant. A motion for a new trial having been discharged, judgment was entered on the verdict, when the plaintiff took this writ assigning as error, inter alia:

2. The answer to the defendant's point.[2]

3. The answer to the plaintiff's point.[3]

*Mr. George M. Reade* for the appellant.

Counsel cited: Chalfont v. Johnston, 3 Y. 16; Hall v. Pratt, 5 Ohio 72; Lowe v. Peskett, 16 C. B. 500; Clauser's Est., 1 W. & S. 208; Bower's App., 2 Pa. 432; Royer's App., 13 Pa. 569; Adlum's Est., 22 Pa. 514; Carpenter's App., 2 Gr. 381.

*Mr. A. V. Barker* (with him *Mr. John P. Linton*), for the appellee.

Counsel cited: Griffith v. Chew, 8 S. & R. 29; Woodward v. Lord Darcy, 1 Plowd. 184; Bosanquet v. Wray, 6 Taunt. 597.

OPINION, MR. JUSTICE STERRETT:

As a general rule, it cannot be doubted that in an action against the personal representative of a decedent, to establish a debt against the estate, Courts of Common Pleas have concurrent jurisdiction with the Orphans' Court: Swain v. Ettling, 32 Pa. 486; Kimble v. Carothers, 81 Pa. 494. Indeed, it is sometimes necessary that creditors should have their unsecured claims adjudicated in a common law court, for the purpose of continuing their lien against real estate of which their debtors died seised. Our statute provides that no debts of a decedent, except they be secured by mortgage or judgment, shall remain a lien on the real estate of such decedent longer than five years after his decease, unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors, or administrators within that period, etc. It sometimes happens, that, for reasons beyond the control of personal representatives, the estate cannot be settled within the five years, and thus it may become necessary for creditors to preserve the lien of their unsecured claims.

The plaintiff claims to be, and for the purposes of this case it must be assumed that he is, a creditor of his father's estate. As such he had an undoubted right to have his claim adjudicated by the Court of Common Pleas, unless there is something peculiar in his status or relation to the estate that excludes him from that jurisdiction. Prior to the trial, there was nothing on the record to indicate that his relation to the estate was any other than that of an ordinary creditor endeavoring to have his claim adjudicated. On the trial, however, it was shown that he was one of the executors of his father's will, and united with his co-executrix in proving it, and taking out letters testamentary; but it did not appear that he took an active part in the administration of the estate, or that he received any of the assets. On the contrary, it was shown that his stepmother, co-executrix, assumed to be and really was acting executrix, and, as such, received all the assets, and, with the exception of a few unimportant acts, administered the entire personal estate, and filed what purports to be a separate account, which was confirmed by the court. That account is entitled: "First and final account of Mrs. M. A. Pringle, acting executrix of William Pringle, Jr., late of Portage township,

deceased." In it she charges herself "with the real and personal estate bequeathed to her by the will of said decedent, (no appraisement of the same being made.)" She also takes credit for payment of certain bequests, debts, and expenses of administration, aggregating $1,898.28; but, of course, not exhibiting any balance, generally, or to herself as residuary legatee.

Two points for charge were submitted by defendant: "(1) That the Common Pleas has concurrent jurisdiction of all disputed claims against the estate, with the Orphans' Court;" and "(2) that the rules of court provide expressly that all parties to a suit shall be taken to be in the way they stand on the docket, unless denied by proper objection, before plea pleaded."

The second was substantially, and, as we think, erroneously, refused. The rule of court was evidently intended for just such cases as the one before us. The first point was affirmed, but the jury was instructed, in the same connection, that there were no facts for them to pass upon, and thereupon a verdict was directed for defendant.

According to the rigid rules of the common law, this instruction might be sustained; but, under the changed conditions now existing in this and other states of the Union, as to the effect of acceptance of the office of executor, either by a debtor or creditor of the testator, those rules have been considerably modified. At common law, the appointment of a debtor as executor operated, not merely as an extinguishment of the legal remedy for the collection of the debt, but as an absolute discharge of the debt itself, except in case of a deficiency of assets to satisfy the claims of creditors: 2 Wms. on Executors, 1125. But, as was said in Griffith v. Chew, 8 S. & R. 31: "This doctrine of extinguishment has become obsolete, in consequence of the application of the principles and rules of equity, unless it appears the testator, by naming the debtor his executor, gives him not only the office of executor, but some beneficial interest. He is considered as a trustee, holding a resulting trusteeship for those entitled either as residuary legatees or next of kin. At no one time, in this state, was it an extinguishment of the debt, for the executor has always been held as a trustee: Wilson v. Wilson, 3 Binn. 557; and an action for money had and received will lie against him

in his personal character to recover the distributive share. The executor takes nothing but what is given him by the will, and this, even before the act of 7th April, 1807, which expressly enacts that in a will, not disposing of personal estate, the executor shall distribute the residue among the next of kin." The decisions in Massachusetts and New Jersey are to the same effect: Winship v. Bass, 12 Mass. 199; Wood v. Tallman, 1 N. J. Law 153. Our act of February 24, 1834, § 6, P. L. 73, following the decision in Griffith v. Chew, supra, declares that " the appointment of any person to be an executor shall in no case be deemed a release or extinguishment of any debt or demand which the testator may have had against him," etc.

Again; the creditor of a testator, accepting an appointment as executor, enjoyed at common law the privilege of retaining, for his own debt, a sufficient sum out of the assets, in priority to all other creditors of equal degree. That privilege, however, was not an extinguishment of the executor's claim, unless he had sufficient assets in his hands applicable to debts of same degree as his own. If he had such assets, that fact, in connection with his privilege of applying the assets to his own debt, operated as a satisfaction or extinguishment thereof, because he was within the rule that the person who is to receive the money is the person who ought to pay it; but if he had no assets, the rule did not apply. The debt, in other words, was not extinguished, except upon the assumption that the executor had assets which he could retain to pay himself: 2 Wms. on Executors, 1130.

Under our system of distribution, priority over other creditors, of same grade or class, is prohibited, and hence the privilege of retaining gives the executor no special advantage over other creditors. If the assets are sufficient to pay creditors in full, the executor, in possession of such assets, may apply the same to his own debt, subject to the right of legatees and distributees to contest the validity of his claim, etc. In the case before us, the evidence shows that plaintiff never had in his possession any assets applicable to the payment of his claim. If his claim is valid, (and the evidence tends to prove that it is,) he is still a creditor of his father's estate, and, in some form, should be permitted to assert his claim. The naked objection

that he is one of the executors, but without assets, is purely technical, and ought not to prevent him from having his claim adjudicated in a court of otherwise competent jurisdiction, unless it cannot be avoided. The suit is brought in his own name, as an individual creditor, against an acting executrix, who in the statement she filed in the Orphans' Court admits she is in possession of the assets, except so far as she applied the same to payment of the debts, etc., specified in that statement. As a personal representative of the testator, she is fully competent to act and make such defence as may be necessary.

If plaintiff's claim might be asserted in equity, why can it not be sustained at law, under our peculiar system of administering equitable principles in common-law forms of procedure? In Chalfont v. Johnston, 3 Y. 16, it was strongly intimated that such an action could be maintained. In that case it appeared that Johnston, the obligor in a bond, appointed an executor who afterward became one of the executors of the obligee, Mary Goodwin. One of her executors, Frances Goodwin, assigned the bond to Chalfont, plaintiff in the suit on same bond. It was contended that it was the obligee's folly to appoint as one of her executors the same person who was known to be the executor of the obligor, but the court said: "If this technical nicety was intended to be insisted on, it should have been pleaded in abatement, like the case of part owners not sued: Rice v. Shute, 2 W. Bl. 696; Abbot v. Smith, 2 W. Bl. 947; Rice v. Shute, 5 Burr. 2613; Mitchell v. Tarbutt, 5 Term R. 651. Perhaps it would be difficult, if not impracticable, to have given the plaintiff a better writ. Caleb Johnston was not compellable to join in the assignment, nor could he be reasonably expected to join in a suit against himself. Under the circumstances, a bill would certainly be supported in chancery against the now defendant. Courts in this state adopt the rules of equity, which form a part of our law." In Hall v. Pratt, 5 Ohio 72, where a creditor was appointed administrator of his debtor, with another person, but received no assets which he could retain for the payment of his debt, and died, it was held that his administrator could maintain an action against the surviving administrator, on the ground that plaintiff's intestate received no assets, and therefore it could not be assumed that the debt was paid or extinguished. In Lowe v. Peskett,

16 C. B. 500, a testator appointed, as one of his executors, a creditor who was the payee and holder of his note. The executor indorsed the note to a third party, who brought suit thereon against the executors of the testator, maker of the note. It appearing that the note had not been satisfied out of the assets of the deceased maker, the plaintiff was permitted to recover.

If the plaintiff in this case had received the assets, and filed an account in which he took credit for the amount of his claim, that credit item might have been excepted to by his co-executrix, who is also residuary devisee, etc. In that event she would have occupied a position similar to the one she now occupies as defendant in this suit. The case was ruled out of court on a bare technicality, that could not have affected the merits of the claim. If the rule of court above referred to had been enforced, no ground for that technicality would have existed on the record. But, aside from that, the action should have been sustained, and the case submitted to the jury on its merits.

> Judgment reversed, and a venire facias de novo awarded.