Keyser's Estate.

Argued January 7, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. M. Ewing,* with him *Julius L. Schoenberg,* for appellant.

*A. E. Kountz,* with him *W. I. King,* for appellee.

Opinion by Mr. Justice Maxey, March 31, 1938:

The controversy in this case is between appellant and his sister, the appellee, who is surviving executrix of the estate of their father, Charles F. Keyser, deceased, and involves the ownership of certain shares of stock which appellant alleges the decedent gave him prior to his death. Appellee sought and obtained a decree awarding the stock to her as part of the estate. This appeal followed.

Decedent died on March 10, 1934, leaving a widow and five children. By his will he appointed appellee, a daughter, and John R. Davies, President of the Duquesne Trust Company, his executors. He had formerly resided and practiced medicine exclusively in Duquesne, and to the day of his death maintained his legal residence there, but during the latter years of his life spent most of his time in Cuyahoga Falls, Ohio, where his widow and most of his children lived and where he died. Decedent last visited Duquesne in September, 1933. Appellant was the only child who resided in Duquesne. He and his wife looked after most of his father's business affairs, and attended to the collection of the rents accruing from certain real estate in Duquesne which decedent owned and of dividends paid on his securities.

The disputed stock was represented by seven certificates: three of the Duquesne Trust Company, for 15, 15, and 10 shares respectively; one of the Republic Steel Corporation, for 100 shares; one of Commonwealth & Southern Corporation, for 100 shares; and two of General Refractories Company, for 100 shares each. Photostatic copies of all these certificates were placed in evidence. Six of them bore the endorsement, purportedly of decedent, transferring the shares to appellant under date, as to two certificates, of January 31, 1933, and as to the other four, September 19, 1933. On these endorsements the only part which appellant

claims is in his father's handwriting is decedent's signature, appellant's name as transferee being typed in and appellant's address being in his own hand. In each instance decedent's signature was witnessed by appellant's cousin. The seventh certificate, for 10 shares of Duquesne Trust Company Stock, is endorsed only by mark, undated, and no part of the endorsement is in decedent's hand. The witnesses who signed were appellant and Davies, the co-executor, now deceased. This certificate was at all times prior to decedent's death held in the treasury of the trust company in compliance with the Banking Code of May 15, 1933, P. L. 624, Sec. 502 (E) (7 P. S. sections 819-502 (E)), to qualify decedent as a director. None of the stock was transferred on the books of the various corporations until some weeks after decedent's death, when appellant sent in the stock and had new certificates issued in his own name.

After the death of Davies, her co-executor, the appellee, knowing her father had owned stock in these companies before his death, made an investigation which disclosed the transfers above mentioned. She thereupon petitioned the Orphans' Court having jurisdiction of the estate for a citation against appellant to compel him to re-assign the stock to her for administration as part of the estate. After a full hearing at which both parties produced copious evidence, the court entered an order awarding appellee a precept for a trial in the court of common pleas on the issue, as stated by the court in its order, "whether certain shares of stock were the property of Charles F. Keyser at the time of his death." A jury trial on this issue was had in the common pleas court, with appellee-executrix as plaintiff and appellant as defendant, resulting in a verdict against defendant. The orphans' court thereupon entered a decree awarding the stock to the executrix as part of the estate and directing appellant to re-transfer the stock to her.

The primary question to be considered is whether the orphans' court had jurisdiction of the dispute as to ownership of the stock, and hence had power to award an issue to the common pleas and to enter a decree based on the verdict which was rendered. Our cases leave no doubt as to the rule to be applied. Recently we said, in *McGovern's Estate,* 322 Pa. 379, 381, 186 A. 89, in delimiting the power of the orphans' court, that it "may assume jurisdiction to compel a third party to restore property to the estate of a decedent where it was, at one time, *in the hands of the administrator or executor,* or *in the possession of the decedent at the time of his death";* and it was further stated (page 383) that "where money or property was not possessed by a decedent at the time of his death or subsequently by his representative, and where possession is in, and title is claimed by, another who is in no way connected with the administration of the estate," that court has no jurisdiction to determine the fact of ownership or title as against the third party in possession of the money or property under a claim of right. Earlier cases of importance which deal with the subject are *Cutler's Est.,* 225 Pa. 167, 73 A. 1111; *Williams' Est.,* 236 Pa. 259, 84 A. 848, where all the earlier cases were reviewed; and *Mauser v. Mauser,* 326 Pa. 257, 192 A. 137.

From these and other decisions the applicable principles governing the jurisdiction of the orphans' court, where title to personal property is in dispute may be thus summarized: (1) The preliminary question for consideration is where the possession of the disputed property was at the time of the decedent's death and thereafter, up to the time of hearing. (2) If the property was in the decedent's possession, either actually or presumptively, at the time of his death, or thereafter at any time came into the possession of his personal representative, as part of the estate for purposes of administration and ultimate distribution, the jurisdic-

tion of the orphans' court attaches and it may decree
or award the disposition thereof, subject to the pro-
cedural rule next to be stated. (3) If upon a hearing
it so appears, yet a substantial dispute as to title or
ownership is shown to exist between the rival claimants,
the orphans' court has no power to try and determine
this question, but may submit the issue to the court
of common pleas for a trial by jury, under the power
conferred by the Act of June 7, 1917, P. L. 363, sec. 21
(a) (20 P. S. sec. 2581) ; the verdict so found, where
certified to the orphans' court, may then become the
basis of a decree by that court settling the controversy.
(4) If, however, the property in dispute was not in
decedent's possession at the time of his death, and did
not thereafter come into the hands of his personal rep-
resentative, the orphans' court is without power to de-
termine title or ownership disputed by a third party
claiming the property as his own. In such case the
executor or administrator must bring an action at law
or in equity in the court of common pleas against the
party in possession.

In the present case, however, the preliminary ques-
tion upon which jurisdiction depended was itself in
dispute, namely, whether decedent had possession, actual
or presumptive, of the certificates representing the stock
at the time of his death. On the determination of this
question depended not only the jurisdiction of the
orphans' court, but also the title to the stock. This
issue was resolved against appellant. Was there evi-
dence sufficient to sustain the claim of the executrix?

Her proof was as follows: She lived in Ohio and had
little to do with the preliminary administration of the
estate, which she left largely to Davies, her co-executor,
an associate of decedent's, and close at hand to the seat
of administration. Davies filed an inventory of the
estate, which failed to include the stock as part of the
assets. Of this appellee had no knowledge. She visited
the Duquesne Trust Company on two occasions, in April

and May, 1934, to examine decedent's effects in his safe deposit box. The stocks were not found in the box. On the first visit, Davies and appellant were both present and at the former's suggestion appellant turned over to appellee a key to the box, of which he had been in possession prior to and at the time of decedent's death. On the second visit an unopened envelope bearing appellant's name was produced from the box and delivered to him. Appellee asked her brother what had become of decedent's stocks and he replied he did not know. Further testimony came from decedent's counsel in Ohio, who drew the will on probate, which was executed on January 2, 1934, long after the certificates had allegedly been assigned to appellant, according to his contention. This attorney, who had no interest in the case, testified that when he drew Dr. Keyser's will decedent discussed generally with him the condition of his estate, mentioning his ownership of stock of the three corporations and the trust company, and stated that the income of $100 a month provided for his wife in the will would be furnished from these stocks. Since the remainder of the estate contained only a few shares of stock of value less than $1,000, an inference is afforded that decedent thought he still owned the disputed stock, valued at approximately $16,000 at his death.

Appellee's husband testified that in the spring of 1934 when he asked appellant what had become of his father's securities, appellant replied that decedent had wasted and squandered them. There was other evidence to the effect that during the spring of 1934, after decedent's death, both Davies and appellant had access to the safe deposit box at times when appellee was not present. As already noted, the signatures of decedent on all the certificates (except that bearing decedent's alleged mark) were witnessed by his niece, but she testified that in no instance did she actually see decedent write his name. Appellant's proof afforded no explana-

tion. as to why the one certificate for ten shares of Duquesne Trust Company Stock was signed by mark, without date, and this anomaly, coupled with proof that these shares were on deposit with the trust company until death removed decedent as a director, strongly indicate that this certificate was never properly endorsed so as to convey title. to appellant. In fact, appellant in his brief substantially admits the ineptness of this transfer to pass title.

All this, however, may be considered as merely corroborative of appellee's basic contention, to wit: that the six certificates bearing decedent's alleged endorsement were in fact forged. A qualified handwriting expert testified that, having examined the disputed signatures and compared them with admittedly genuine specimens, they were, in his opinion, spurious. His testimony was impressive. Appellant offered no expert testimony in rebuttal.

Assuming that the endorsements were forged, as this evidence tended to show, we must conclude that appellee made out a prima facie case of continued ownership of the stock by decedent up to his death, and, in connection with the other evidence above referred to, of possession of the stock by decedent at the time he died. By Section 21 of the Uniform Stock Transfer Act of May 5, 1911, P. L. 126 (15 P. S. sec. 321), "the person to whom a certificate was originally issued is the person appearing by the certificate to be the owner thereof, and of the shares represented thereby, until and unless he endorses the certificate to another specified person. . . ." As appellee's evidence tended to show that decedent had never endorsed the certificates to another, or in fact endorsed them at all, presumptive title remained in him until his death. The factor of possession, essential to jurisdiction of the orphans' court, was sufficiently supplied by the other elements of proof indicated above, and by the presumption of retention of title, which arose from decedent's failure

up to the time of his death to endorse the non-negotiable stock certificates in dispute, which was a fact that appellee's evidence, if believed, was sufficient to establish. That there was countervailing proof offered by appellant, tending to show the signatures were genuine or were adopted by decedent as his own, serves only to indicate that the question of ownership was properly submitted to the jury in the method adopted by the orphans' court, in sending this issue to the court of common pleas. The agency relationship existing between decedent and appellant and his wife prior to the former's death was not denied, and its existence warranted a finding that appellant's possession of the certificates at his father's death, if such was the fact, was as agent only. The question of possession by decedent at the time of his death went to the jurisdiction of the orphans' court, and the power of that court to determine this fact of its own jurisdiction by the procedure which it followed in this instance cannot be doubted: *Silver v. Schuylkill County*, 32 Pa. 356; 15 C. J. 851, sec. 170. The awarding of the issue to the court of common pleas was tantamount to holding that a prima facie case for the exercise of the jurisdiction of the orphans' court had been established by appellee's evidence, and this evidence sufficed to submit to the jury the paramount issue of ownership of the stock.

In the subsidiary matters, the alleged errors complained of are not substantiated by an examination of the record. The evidence mentioned above was corroborative of the expert opinion as to the forgeries, and, when accepted by the jury, was sufficient to sustain the finding that the stock never ceased to be decedent's property. The circumstances surrounding the pretended transfer of the 10 shares of Duquesne Trust Company Stock held by its treasurer to the day of decedent's death alone challenged the integrity of appellant's claim to the ownership of all the stock. The precept formulated by the orphans' court for submission to the court

of common pleas, stating the issue as one of ownership of the certificates, defined the question in dispute. Similar issues were submitted in *Leadenham's Est.*, 289 Pa. 216, 137 A. 247; *Craig's Admrs. Appeal*, 77 Pa. 448. It was not essential that the orphans' court direct the filing of pleadings by the parties as a preliminary to the trial of the sole issue of fact involved, which the evidence produced in that court had unmistakably presented. Discussing this point the court below aptly said: "In this contention we find no merit. It is to be borne in mind that the orphans' court framed the precept, defining the form of the issue and presenting a specific question. The trial court adopted and submitted to the jury the precise question therein embraced. The practice in such cases seems to be well settled that the precept shall state the question in precise form, and that the common pleas court shall adopt the same and conduct the trial as to the controlling issue without further pleadings. Such was the procedure in the cases of *Leadenham's Estate*, 289 Pa. 216, 137 A. 247; *Henes v. McGovern, Admr.*, 317 Pa. 302, 176 A. 503; and *Finn, Exr., v. Finn*, 322 Pa. 196, 185 A. 247. In the *Leadenham Estate* case the precept contained a recital that there should be no pleadings. In the other two cases there was no such recital, and the precept in the instant case closely paralleled the precepts in the three cited cases."

Appellant was clearly incompetent to testify as to any matter in connection with the alleged gift of the stock prior to decedent's death, the ruling in *Kotz, Admr. v. Smith*, 253 Pa. 346, 98 A. 608, being precisely applicable to the instant case, as that in *Allen's Est.*, 207 Pa. 325, 56 A. 928, is not, under Section 5(e) of the Act of May 23, 1887, P. L. 158. The charge of the trial judge, instructing the jury as to the burden of proof, was not objected to by appellant in any way, as the record clearly discloses, and hence any error in this respect is not available on these appeals. The de-

cree of the orphans' court was in strict conformity with the event of the issue determined in the common pleas, as certified to the former, and, since this issue involved a jurisdictional fact, the determination thereof was conclusive on the orphans' court: *Cross's Est.*, 278 Pa. 170, 122 A. 267.

The judgment of the court of common pleas is affirmed; the decree of the orphans' court is affirmed at the appellant's cost.