## Crisswell's Estate.

Argued March 29, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

John E. Evans, Sr., of Margiotti, Pugliese, Evans & Buckley, with him David H. Kramer, for appellant.

Kenneth G. Jackson, with him Lee W. Eckels, and Thorp, Bostwick, Reed & Armstrong, for appellee.

OPINION BY MR. JUSTICE STERN, April 17, 1939:

This is another of the many controversies which have arisen concerning the relative jurisdiction of the orphans' court and the court of common pleas where there

is a dispute between a decedent's estate and a claimant as to the ownership of personal property.

James H. Crisswell died on November 27, 1936. His will, dated October 16, 1934, named Robert B. Elliott as executor and gave his residuary estate in equal shares to his brother Edward B. Crisswell and his sister Jeannette Hodel.

On December 28, 1936, a woman who claimed that her name was Anna Pierson Crisswell and that she was the widow of James H. Crisswell instituted in the Court of Common Pleas of Allegheny County an action of replevin against Peoples-Pittsburgh Trust Company in which she alleged that at the time of Crisswell's death there were certain stock certificates of which he, in his lifetime, was the owner, and which were contained in a safe deposit box in the vault of that company; that, in expectation of his impending death, he delivered to her, on November 18, 1936, the key of the box, thereby transferring to her title to the contents; and that the Trust Company refused to give her access to the box. Elliott, as executor of the estate, intervened, and, by filing a counterbond, prevented her from obtaining possession of the certificates. In his affidavit of defense he denied that decedent had given her the key in expectation of impending death or that the contents of the box had ever become her property; he alleged that she had not been married to decedent, that her proper name was Anna Pierson, that for a long time prior to his death decedent was non compos mentis and incapable of transacting any business or making any valid gift, and that on November 18, 1936, the date of the alleged delivery of the key, he was removed from his home to the psychopathic ward of a hospital where he remained until the time of his death. The affidavit of defense also denied the jurisdiction of the court in the replevin proceedings.

On October 28, 1938, the replevin case being then on the list awaiting trial, Jeannette Hodel filed a petition in the Orphans' Court of Allegheny County praying for

a citation on Anna Pierson, or Anna Pierson Crisswell, to show cause why she should not be enjoined from the further prosecution of the replevin action, and on Robert B. Elliott, executor, to show cause why he should not be restrained from joining in a trial of the issue therein involved. She alleged that the certificates of stock had been in the possession of decedent at the time of his death, were now in the possession of the executor, and were included in the inventory of the estate. An answer was filed by Anna Pierson, or Anna Pierson Crisswell, setting out the facts upon which she relied to establish a gift of the certificates causa mortis, and asserting that the court of common pleas had exclusive jurisdiction to determine the title.

The Orphans' Court issued an injunction restraining Anna Pierson, or Anna Pierson Crisswell, from further prosecuting the suit in replevin, but permitting her to present to it a petition for the allowance of her claim. From that decree she appeals.

The jurisdiction of the orphans' court over the settlement and distribution of decedents' estates is *exclusive*, and necessarily includes the power to determine all questions essential thereto: *Link's Estate (No. 1)*, 319 Pa. 513, 516. If, however, there is a dispute as to the title to property which was not in decedent's possession at the time of his death and did not thereafter come into the hands of his personal representative, the orphans' court is without power to determine title or ownership disputed by a third party claiming the property as his own, and in such case the executor or administrator must bring an action at law or in equity in the court of common pleas against the party in possession: *Cutler's Estate*, 225 Pa. 167; *McGovern's Estate*, 322 Pa. 379; *Keyser's Estate*, 329 Pa. 514, 519. On the other hand, if the property was in decedent's possession, either actually or presumptively, at the time of his death, or thereafter at any time came into the possession of his personal representative as part of the estate for pur-

poses of administration and distribution, the jurisdiction of the orphans' court attaches, at least preliminarily: *Paxson's Estate*, 225 Pa. 204; *Cooper's Estate*, 263 Pa. 37; *Mauser v. Mauser*, 326 Pa. 257; *Keyser's Estate*, 329 Pa. 514, 518, 519; see also *Estate of Clarence V. Elliott*, 113 Pa. Superior Ct. 350, 355. The first question for consideration, therefore, is where the possession of the disputed property was at the time of decedent's death and thereafter. If the property is fairly to be regarded as having been in decedent's possession, either actually or presumptively, at the time of his death, but there is a substantial factual dispute as to ownership, the orphans' court has no power, sitting as a fact-finding tribunal, to determine this question, but may submit the issue for a trial by jury, and a verdict so found will properly constitute the basis of a decree by that court settling the controversy: *Keyser's Estate*, 329 Pa. 514, 518, 519.

Appellant apparently labors under the misconception that by her denial that the title to the stock certificate was in decedent at the time of his death, and her assertion that possession had been symbolically transferred to her a few days before, she thereby established a right to have the question of ownership determined immediately in the court of common pleas. Mere denials or assertions are not in themselves sufficient. "If at testator's death the property is shown to have been in his possession, or if for any other reason it was presumably his, a mere denial of his ownership unsupported will not oust the court [orphans' court] of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists": *Cutler's Estate*, 225 Pa. 167, 171; *Hermann's Estate*, 226 Pa. 543; *Walkinshaw Estate*, 275 Pa. 121, 125; *Messmore's Estate*, 290 Pa. 107, 116; *In re Estate of Eliza Gallagher*, 109 Pa. Superior Ct. 304, 307, 308. It is true that if, as appellant alleges, decedent handed her the key of the safe de-

posit box with the intent to make a gift causa mortis, this may have been enough to establish a constructive delivery of the property to which the key gave access: *Elliott's Estate,* 312 Pa. 493, 500. But it is denied by the executor that such a gift, vesting possession in her, was made, or, if made, that decedent was of sufficient mental competency validly to effectuate it. Moreover, the certificates, being in the name of decedent and unendorsed, imported ownership in him up to the time of his death, and therefore established a prima facie title in his estate: *Paxson's Estate,* 225 Pa. 204, 210; *Keyser's Estate,* 329 Pa. 514, 521. When appellant produces evidence before the orphans' court in support of her claim, that court may conclude that a substantial dispute as to title exists and therefore submit the issue for a trial by jury, but, her possession not being admitted nor reasonably apparent, the question whether, under the circumstances, a substantial dispute exists is one to be decided by the orphans' court in limine, and appellant cannot short-circuit the case into the court of common pleas merely by pleading facts which, if true, may establish her title, but which are seriously controverted by the executor and a residuary legatee of decedent's estate.

There can be no doubt as to the power of the orphans' court to enjoin the prosecution of the replevin action. The Act of June 7, 1917, P. L. 363, section 16, gives to orphans' courts the power "to prevent, by orders in the nature of writs of injunction, acts contrary to law or equity, prejudicial to property over which they shall have jurisdiction." Illustrations of the exercise of this power are to be found in *Appeal of the Odd Fellows Savings Bank,* 123 Pa. 356, *Tyson v. Rittenhouse,* 186 Pa. 137, *Alexander's Estate,* 214 Pa. 369, *Williams' Estate,* 236 Pa. 259, 274, and *Heinz's Estate,* 313 Pa. 6, 10.

Appellant makes a point of the delay which attended the application to the orphans' court for an injunction. Want of jurisdiction over the subject-matter of a con-

troversy may be taken advantage of at any stage of the proceedings, and, since the court of common pleas was without jurisdiction to entertain the cause unless and until the orphans' court should submit to it for trial the issue of title, the doctrine of laches cannot be invoked.

The decree of the court below is affirmed at the costs of appellant.