In re PHILADELPHIA RAPID TRANSIT
CO.

IKEBE et al. v. PHILADELPHIA RAPID
TRANSIT CO.

McANANY et al. v. SAME.

MITTEN v. SAME.

Nos. 7436, 7454, 7456.

Circuit Court of Appeals, Third Circuit.

Jan. 16, 1941.

Rehearing Denied Feb. 24, 1941.

Walter B. Gibbons, of Philadelphia, Pa., for appellants in No. 7436.

Hugh McAnany, Jr., of Philadelphia, Pa., for appellant in 7454.

Isaac Grossman, of Philadelphia, Pa., for appellant in 7456.

Frank A. Bedford, Jr., and George Wharton Pepper, both of Philadelphia, Pa., for appellee.

Before CLARK, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The question presented by these appeals is whether the Philadelphia Rapid Transit Company assumed liability for the payment of certain annuities bequeathed by the will of Thomas E. Mitten, deceased. The annuitants pressed such claims in the proceeding below for the reorganization of the Transit Company, a debtor. The District Court held that the asserted liability did not exist and directed that the debtor "discontinue payments of the sums of money bequeathed as annuities or legacies by the will of Thomas E. Mitten, deceased". From that order, the petitioning annuitants severally took the present appeals.

The possibility that a public service company, engaged in the business of transporting passengers for hire, could be obliged to discharge the testamentary benefactions of a private individual arises from the unusual procedure followed in an effort to invest the Transit Company with the assets of the testator's estate.

Mitten died October 1, 1929, leaving an estate which was inventoried and appraised for administration at a total gross value of $3,663,527.58 and for inheritance tax purposes at $3,333,667.21. By his will, the decedent created a trust of his residuary estate for the payment of specified annuities to his son and to certain others (principally relatives) with remainders over to the son, and appointed his son (Dr. Arthur A. Mitten) and a brother as executors and trustees under the will. The son subse-quently renounced his interest in the father's estate so that his rights either as an annuitant or remainderman are in no way involved here.

Five days before Mitten's death, to wit, on September 26, 1929, Will B. Hadley, ostensibly acting in his official capacity as Controller of the City and County of Philadelphia, filed a bill in equity in a Court of Common Pleas of Philadelphia County against Mitten, the Philadelphia Rapid Transit Company, Mitten Management, Inc., and Mitten Bank Securities Corporation. The bill alleged certain unlawful transactions among the defendants, including conversion of assets of the Transit Company to the use of Mitten and the other defendants, and prayed for an accounting, restitution, cancellation of certain contracts and other equitable relief. Following Mitten's death, the record in the equity suit was amended by order of court so as to show the executors and trustees under Mitten's will as parties defendant in place of Mitten and the addition of Dr. Arthur A. Mitten, individually, and Mitten Men & Management Bank & Trust Company, a Pennsylvania corporation, also as parties defendant. The bill did not aver any interest or hurt, personal to Hadley, and none was proven. The suit, when instituted, was wholly unauthorized by the City of Philadelphia. According to the City's petition for leave to intervene, the proceeding was "illegal, improper and * * * [failed] of justification", Hadley having no legal right to sue as the City's representative. The City's intervention, as a party plaintiff, on December 12, 1929, was more than three months after Mitten's death.

Thereafter, the case proceeded to trial before the Court of Common Pleas where, after extensive hearings, the court on April 11, 1931, handed down what it entitled a "Statement of Pleadings, Findings of Fact, Discussion, Conclusions of Law, and Decree Nisi". Among several hundred separate findings of fact, the court found that " * * * [an] audit of the books, accounts and vouchers of the Philadelphia Rapid Transit Company shows that Thomas E. Mitten and/or Mitten Management, Inc. * * * caused payments to be made from Philadelphia Rapid Transit Company's funds resulting in losses to the Company * * * chargeable to the Estate of Thomas E. Mitten, Deceased, and/or Mitten Management, Inc." in a total sum of $15,069,150.12. How much of this total

amount might be legally allocated as a charge against the Mitten estate, the court did not find or otherwise determine. As indicated by the findings of fact upon which the above quoted finding was based, the liability of the Mitten estate might possibly not have exceeded $2,048,792.02—a sum considerably less than the gross value of the Mitten estate. In any event, neither then nor thereafter did the court make an adjudication of any definite liability against either Mitten or his estate. Nor was any money decree ever entered against either. The decree nisi, then entered by the court, was limited to placing the property and assets of the Philadelphia Rapid Transit Company in the hands of receivers for their operation, management and control within certain enumerated broad powers.

Upon dismissing exceptions to the decree nisi, the court by order of May 14, 1931, directed the cancellation of certain leases, the restitution of certain properties and the reorganization of the board of directors of the Transit Company with provision for appointment thereto by the court. The prior decree appointing the receivers was revoked, the court noting its retention of jurisdiction for further proceedings.

On November 3, 1931, counsel for the board of directors of the Transit Company presented the company's petition, in the equity proceeding, wherein it was averred that in order to obtain fullest restitution from the Mitten defendants the Transit Company's board had required the Mitten defendants to place all of their assets in the company's control. The petitioner recommended that the assets of the Mitten estate and the interest of Dr. Arthur A. Mitten and Mitten Management, Inc., be accepted in full settlement of their liabilities and further stated that the legacies and annuities provided for in the will of Thomas E. Mitten could not be recognized as prior in legal right to the claims of the Transit Company. The petition concluded by praying that the decree to be entered should provide "that any action with reference to these legacies and annuities * * * be left in the discretion of the Board of Directors" of the Transit Company. The record clearly indicates that neither the court nor counsel was unaware of the burden which the presence of the undefeated annuities foreshadowed from a legal standpoint. In fact, counsel then openly stated that "probably the Court would be anxious to protect" the legacies and annuities. The qualification implied by the use of "probably" comported with the hope of escape for the company indicated by counsel's observation to the court that "the petition represents a maximum gain for P. R. T. and a minimum assumption of obligation".

Forthwith, upon the presentation of this petition, the court entered the decree of November 3, 1931, which directed the executors of the Mitten estate to transfer all of the decedent's assets to the Transit Company and assumed to empower the Company to "take whatever action, if any, it shall in its discretion see fit to take with reference to the annuities and legacies * * *".

The executors of the Mitten estate, after having paid all of the annuitants, who are also the present appellants, the amounts of their respective annuities from October of 1929 to December of 1931, inclusive, and in apparent compliance with the decree of the Common Pleas Court, transferred all of the decedent's assets to the Transit Company. The equity suit was thereupon marked settled and discontinued of record as to all of the defendants except the Philadelphia Rapid Transit Company. The annuitants, or at least such as are appellants herein, had never been made parties to the equity suit nor had they been otherwise formally notified of its pendency.

On January 25, 1932, the Transit Company, then possessed of the assets of the Mitten estate, entered upon the payment of the annuities. A letter to the annuitants enclosed with the first payment stated, in part, that the payment should not be taken "as a precedent as the Board must continue to exercise the discretion lodged with it by the Court * * *". However, the Transit Company thereafter continued to make the annuity payments regularly until October 1, 1934, when it filed its debtor petition in the District Court for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

Shortly thereafter, to wit, on January 25, 1935, the debtor petitioned the Bankruptcy Court for advice respecting payment of the annuities. Among other things, the petition set forth that the annuitants had had no day in court and had not waived their rights to the annuities; that the decree of November 3, 1931 in the equity proceeding had authorized the petitioner to pay the annuities in its discretion; that

"The [Mitten] Estate [was] thereafter turned over to the Debtor and the Debtor accepted the Estate assets on the assumption that the annuities would be regarded as in the nature of a charge on the Estate assets and would be paid * * *"; and that "The estate assets which were received by the Debtor and which the Debtor still holds and owns are of a value greatly in excess of the worth of the annuities".

Accordingly, the District Court entered an order (January 25, 1935) authorizing and instructing the debtor to pay the annuities, until further order of the court, as they had theretofore been paid. Pursuant to this authorization, the debtor continued to pay the annuities until April 19, 1937, when the payments were abruptly discontinued without further order of the court. Apparently, this action by the debtor was precipitated by an application to the court on February 26, 1937, by several of the annuitants to compel the debtor to post security for the payment of the annuities. Because of this application, the Public Service Commission of Pennsylvania, which had an interest in the reorganization of the debtor, filed a "Suggestion" with the District Court requesting that the court reconsider its order of January 25, 1935, which had authorized the debtor to pay the annuities.

The District Court then referred the matter to a special master on March 31, 1937, who, after hearings, a first report, a re-reference and further hearings, submitted his second and final report to the court on February 6, 1940, in which he recommended that the annuitants' petition of February 26, 1937 for security be dismissed; that the order of January 25, 1935, authorizing the debtor to pay the annuities, be revoked; and that no further payments on account of the annuities should be made by the debtor. Exceptions filed by the annuitants to this report were dismissed by the court in an order (accompanied by an opinion) dated April 2, 1940, which expressly approved and adopted the master's recommendations. The instant appeals followed.

It is the appellants' contention that, under the law of Pennsylvania, the distribution of a decedent's estate whether among creditors or beneficiaries is committed exclusively to the Orphans' Court; that the decree of the Common Pleas Court directing the executors of Mitten's will to assign and transfer his estate to the Transit Company in ostensible satisfaction of the latter's undetermined claims was coram non judice; and that, under the circumstances, the Transit Company received and accepted the Mitten estate subject, as a matter of legal implication, to the charges imposed upon it by the testator in favor of the appellant annuitants.

In denying to the appellants standing as creditors of the debtor, the District Court arbitrarily assumed the validity of the Common Pleas decree although the question of its fundamental infirmity was inherent to a proper consideration of the appellants' asserted rights. As confirmatory of the finality of the decree in equity, the District Court observed that it "remains unappealed from, and therefore * * * is entitled to full faith and credit by this Court", as if the suggested inference could supply jurisdiction even though none existed. Moreover, a right of appeal was not open to the annuitants. They were not parties to the equity proceeding and, beyond that, no appealable adjudication, order or decree had ever been entered by the Common Pleas Court prior to the decree of November 3, 1931. The District Court mistakenly speaks of the so-called adjudication of April 11, 1931 as "declaring that the Mitten estate was indebted to the present Debtor in the sum of $15,069,-152.12", etc. It did nothing of the sort, as even a cursory examination of that document should have readily disclosed. Coming to the decree of November 3, 1931, immediately upon the executors' prompt compliance with the direction to turn over the estate assets to the Transit Company, the equity proceeding was marked settled and discontinued of record as to all of the defendants save the Transit Company. Obviously, a right of appeal was no longer open to anyone aggrieved by the executors' surrender of the estate's assets.

It was incumbent upon the court below to consider and determine whether the decree of the Common Pleas Court, which the annuitants assail, was competent to that court's jurisdiction. The requirement of the Federal Constitution, art. 4, § 1, that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State does not contemplate that an invalid judgment or decree shall thereafter be automatically validated. The constitutional provision controls alike the Federal and the State courts. As was said by the Su-

preme Court in Cooper v. Newell, 173 U.S. 555, at page 567, 19 S.Ct. 506, at page 510, 43 L.Ed. 808: "The same rule applies to each, and the question of jurisdiction is open to inquiry, even when the judgment of the court of a state comes under consideration in a court of the United States sitting in the same state" (citing cases). See also Spokane, etc., R. Co. v. Whitely, 237 U.S. 487, 496, 35 S.Ct. 655, 59 L.Ed. 1060, L.R.A.1915F, 736; Thompson v. Thompson, 226 U.S. 551, 561, 33 S.Ct. 129, 57 L.Ed. 347; Bigelow v. Old Dominion Copper Mining, etc., Co., 225 U.S. 111, 129-131, 32 S.Ct. 641, 56 L.Ed. 1009, Ann. Cas.1913E, 875; Brown v. Fletcher's Estate, 210 U.S. 82, 88, 28 S.Ct. 702, 52 L. Ed. 966.

■ Jurisdiction to distribute the assets of a decedent's estate among creditors and others interested is committed by statute in Pennsylvania to the several Orphans' Courts of the State. Sec. 9(a) and 9(e) of the Act of June 7, 1917, P.L. 363, 20 P.S. §§ 2241, 2245. The jurisdiction "within its appointed orbit" is exclusive to the Orphans' Court under the Act of 1917, supra (Crisswell's Estate, 334 Pa. 266, 269, 5 A.2d 577), just as it had been under the similar statutory provision in the Act of June 16, 1836, Sec. 19, P.L. 792 (Van Dyke's Appeal, 60 Pa. 481, 487). A creditor has, nevertheless, a right to proceed in the Court of Common Pleas to establish his claim against a decedent's estate. Strouss v. Lawrence, 160 Pa. 421, 425, 28 A. 930; Phillips, Administrator, v. Allegheny Valley Railroad Company, 107 Pa. 465, 469; and Pringle v. Pringle, 130 Pa. 565, 18 A. 1024, and cases there cited. But, once the claim is determined, there the jurisdiction of the Court of Common Pleas ends. The creditor must then go into the Orphans' Court which alone has jurisdiction to distribute the decedent's estate among creditors and others interested. Strouss v. Lawrence, supra, 160 Pa. at page 425, 28 A. 930; Appeal of Hammett, 83 Pa. 392, 394; Linsenbigler v. Gourley, 56 Pa. 166, 172, 94 Am.Dec. 51.

■ Here, no action had been validly instituted in the Court of Common Pleas against Mitten during his lifetime. The court's jurisdiction had not competently attached by reason of the suit which the plaintiff Hadley instituted five days before Mitten died. Hadley averred no equity which he could pursue either personally or representatively. As a consequence, proper parties were not brought upon the record at least until the intervention by the City of Philadelphia as a party plaintiff some three months after Mitten's death. But, passing the question which the appellants raise as to whether the Court of Common Pleas acquired jurisdiction for any purpose by reason of the subsequent injection of a cause of action by an amendment of parties (Commonwealth ex rel. Attorney General v. Dillon et al., *81 Pa. 41, 44), certain it is that there was no justiciable cause involving Mitten before the Court of Common Pleas until after his death. And, in any case, no jurisdictional grasp or lien attached by reason of the equity suit, whether begun before or after Mitten's death, which warranted the Court of Common Pleas in assuming to distribute the estate of a deceased debtor.

The want of jurisdiction in the Court of Common Pleas made its decree of November 3, 1931 a nullity. Commonwealth v. Hall, 291 Pa. 341, 354, 140 A. 626, 58 A.L. R. 1023. It represented the exercise of a power which that court did not possess,— a power which in fact was expressly conferred by the law of the State upon another court. Consequently, the rights of the annuitants are to be judged as if the Common Pleas decree of distribution had never been entered.

Had the Court of Common Pleas proceeded to adjudicate a liability of the Mitten estate, which, unappealed from, would have constituted a validly determined debt, the creditor transferee of the estate assets might have equitably met the annuitants, who are volunteers, by showing in the proper forum that the assets received by it did not exceed in value the amount of such debt. However, the essential adjudication was not made and no liability in any sum was decreed. The "and/or" used by the Court of Common Pleas in its findings of fact with respect to the parties responsible for losses suffered by the Transit Company did not, particularly in the light of the other specific findings, impute a joint and several liability on the part of Mitten or his estate and others. The findings of fact did not presume to impose a legal liability either joint or several.

Were this a matter between wholly sui juris individuals, we would be justified in concluding that the transferee, having received the assets of a decedent's estate from the fiduciaries thereof without a decree of award or distribution by a court of

competent jurisdiction, took the property subject to existing charges laid thereon by the testator. See Cameron v. Peoples' Bank of Maytown, 297 Pa. 551, 556, 147 A. 657; Cote v. Langton, 226 Pa. 340, 341, 75 A. 662; Jackson v. Thomson, 222 Pa. 232, 238, 70 A. 1095; Walker v. Quigg, 6 Watts 87, 91, 31 Am.Dec. 452; Restatement of the Law, Trusts, §§ 288 and 291(2).

■ But the Transit Company is affected with a public interest, with knowledge whereof the appellants as well as all others were bound. Sufficient appears of record to indicate that Mitten, and therefore his estate, may have been heavily indebted to the Transit Company even though the sum has never yet been definitely adjudicated. If, therefore, the Mitten estate, after the payment of all valid claims, would have proven insolvent or unavailing for the service of the annuities, it would be adverse to the public interest to lay a charge upon the Transit Company in favor of the annuitants because of legal implication without regard for the equity involved. None the less, a proper respect for the appellants' rights requires that the appellants, like all others, be not deprived of their property without due process of law. So constrained, it is necessary that the value of the decedent's estate and the amount of the valid claims against it be reconstructed in order that the rights of the annuitants may be determined accordingly. This must be done by a court of appropriate jurisdiction which in this instance is the Orphans' Court of Philadelphia County. After all these years, the task will not be an easy one, but the difficulty of the undertaking cannot justify a less onerous course in further disregard of the proper jurisdiction. If, as a result of the Orphans' Court's final decree, any claim shall exist against the Transit Company in favor of any of the present appellants, such claims may then be presented to the District Court in the proceeding for the reorganization of the debtor and be there accorded the recognition and treatment to which the claims by reason of their character or standing are entitled in bankruptcy.

Accordingly, the order of the District Court is reversed with costs to the appellants and the case is remanded with directions to the District Court to retain jurisdiction of the proceeding for the reorganization of the debtor in bankruptcy for the purpose of receiving and passing upon, within a further reasonable period, such claims of the appellants or any of them against the debtor as may be finally decreed by the Orphans' Court of Philadelphia County or until that court determines that no such rights exist.