## Troutman v. Seiler

*Theodore O. Rogers,* for complainant.
*Harold K. Wood,* for respondent.

SWENEY, J., Specially Presiding, November 14, 1946. —Plaintiff in this proceeding in equity seeks, among other things, to compel defendant to state an account as the surviving partner of the deceased, John L. Young, and to require defendant to pay over certain money alleged to constitute assets of Young's estate, which money defendant is charged with having taken and carried away after Young's death.

The bill alleges that John L. Young died on January 13, 1946, a resident of the Borough of West Chester; that plaintiff was granted letters of administration,

c. t. a., in Young's Estate on January 15, 1946, by the Register of Wills of Chester County; that in October of 1944 Young and defendant entered into a verbal (oral?) agreement of partnership, under which they subsequently conducted business at 134 East Gay Street, Borough of West Chester, "and that from October 1944 and until the date of decedent's death, the said John L. Young and defendant, as partners aforesaid and at the above described premises, were engaged in selling at retail cigars, cigarettes, candy and soft drinks and in bookmaking and receiving, registering and recording money bet on horse races." The bill further alleges that Young customarily kept his profits from the partnership operations in a roll of bills of United States currency in his room at his docimile; that Young customarily kept in his possession at his domicile a wallet or wallets containing sums of money which were used to pay the debts of the partnership; that at the time of Young's death $4,500 in United States currency in a roll of bills of various denominations, and the wallet or wallets containing money, were in Young's room and in his possession; that within an hour after Young's death, defendant came to Young's late residence and demanded that $4,500 and the wallet or wallets be turned over to him, and that the Chamberlins (with whom Young resided at the time of his death), "without any right or authority to dispose of decedent's property, permitted defendant to take and carry away $2,250 of the $4,500 aforesaid belonging to decedent, and the wallet or wallets with contents". It is further averred that defendant, personally and by his attorney, has refused to turn over or make an account of either the $2,250 or the contents of the wallet or wallets; and that defendant, personally and by his attorney, has refused to make an account of the transactions and dealings of the partnership, "or of the net share of decedent in the proceeds of the said

partnership operations including the said $2,250 and wallet money beyond admitting that the fixtures in the premises at 134 East Gay Street, Borough of West Chester, Pa., were the sole property of the said John L. Young".

The bill prayed (*a*) that defendant be decreed to state an account of the partnership transactions and dealings, and more particularly of the sums of money contained in the wallet or wallets taken and carried off by defendant, and that defendant be decreed to pay to plaintiff what shall upon such an accounting appear to be due to plaintiff; (*b*) that defendant be decreed to pay plaintiff the sum of $2,250, assets of Young's estate, wrongfully taken and carried off by defendant after Young's death; and (*c*) for injunctive relief.

The bill was filed on February 18, 1946. On the same day, this court granted a preliminary injunction, enjoining defendant:

"(a) from unlawfully and wastefully paying gambling debts with the $2250.00 or the contents of a wallet or wallets which you took from the possession of John L. Young, deceased, on January 13, 1946.

"(b) from unlawfully and wastefully paying gambling debts with any moneys belonging to the former partnership of you and John L. Young, deceased.

"(c) from so intermeddling with the assets of the former partnership of you and John L. Young, deceased, or so conducting the business at 134 East Gay Street, Borough of West Chester, Pennsylvania, as to divert assets rightfully belonging to the estate of John L. Young, deceased, to your own use."

On February 21, 1946, prior to the date fixed for the hearing on the preliminary decree, an appearance was entered for defendant, and, by stipulation of counsel duly filed, the preliminary injunction was continued until final hearing. At the same time, defendant delivered to plaintiff a signed statement agreeing

to hold the sum of $2,250 "available at all times until further order of the court, or until final determination of the above action in equity".

Defendant filed an answer in which he admits that he and Young entered into an oral partnership, and avers that under the terms of the partnership, "the surviving partner would not be required to render an accounting to the estate of the survivor or any other person". Defendant asserts that he is "ready, willing and prepared, and always has been, to submit any information regarding the partnership agreement to the court, or to any person interested therein". The answer states that: "Defendant does not admit that the nature of the business was as described in the complaint . . ." (See Rule 52, "Pennsylvania Rules of Equity Practice", as to the form of the answer). Defendant avers lack of knowledge as to whether the sum of $4,500, or any other sum, or any wallets, were in Young's room at the time of his death. Defendant avers that he went to the home of the Chamberlins (with whom Young resided at the time of his death), upon request, an hour after Young's death; that the sum of $2,250, which was his own property and in Young's custody prior to his death, had been turned over to Mrs. Chamberlin; that Mrs. Chamberlin voluntarily delivered the money to defendant, advising him that Young had told her that it was defendant's money. and was to be returned to him upon demand; that the said money was never the property of John L. Young, or any other person, but was the sole and exclusive property of defendant; that immediately prior to the time when the money was delivered to defendant; it was not in Young's room, but in another part of the house and in the custody of the owners of the house. It is averred in paragraph (6) of the answer that: "the money at all times was defendant's sole and exclusive property; that the estate of John L. Young has no claim to it

whatsoever; and further denies that it had any relation whatsoever to the partnership between him and Mr. Young." Defendant admits that he has refused, personally and through counsel, to turn over to plaintiff the sum of $2,250; and avers that he has been ready and willing at all times, and still is, to make an accounting to plaintiff as administrator.

Defendant further avers that at the time he visited the Chamberlin home, there was delivered to him a wallet containing $80, with the request that the contents be delivered to two persons from whom Young had borrowed the money the day preceding his death; that to defendant's knowledge, the wallet was not in Young's possession at the time of his death, nor was it in the room occupied by him; that defendant accepted the wallet, and delivered the money therein contained to the parties as directed.

By the way of further answer, defendant avers, in paragraph (15), that the sum of $2,250 was delivered to Young more than three weeks prior to his death, "with the understanding that he would deposit it to the credit of defendant, or leave it with some disinterested person who would deliver it to defendant upon demand".

On June 24, 1946, a hearing was held before the writer of this adjudication, specially presiding, and the testimony has been transcribed and filed of record.

The principal issues raised by the pleadings are:

(1) Is plaintiff, as the administrator of the estate of John L. Young, deceased, entitled to an account of Young's interest in the partnership?

(2) Is plaintiff, as such administrator, entitled to the return of the sum of $2,250, and the wallet, or either of them?

(3) Is plaintiff, as such administrator, entitled to relief by injunction?

*Findings of fact*

1. Plaintiff's decedent, John L. Young, died on January 13, 1946, a resident of the Borough of West Chester, Chester County, Pa.

2. On January 15, 1946, plaintiff, H. F. Troutman, was appointed administrator, c. t. a., of the Estate of John L. Young, by the Register of Wills of Chester County.

3. In about October of 1944, John L. Young and defendant, Roscoe W. Seiler, entered into an oral agreement of partnership, under which they subsequently conducted business at 134 East Gay Street, in the Borough of West Chester, Pa.

4. From about October of 1944, and until the date of Young's death, the said John L. Young and defendant, as partners and at the above described premises, engaged in the business of selling at retail cigars, cigarettes, candy and soft drinks, and in bookmaking and receiving, registering and recording money bet on horse races.

5. The said John L. Young, at the time of his death, had in his possession at his residence, at 11 South Church Street, West Chester, Pa., a roll of bills of United States currency amounting to $4,500, and a wallet containing $80.

6. The money contained in the wallet was an asset of the partnership.

7. Within an hour after the death of the said John L. Young, defendant called at decedent's late residence; and Mrs. Alice Chamberlin, Young's landlady, then and there delivered to defendant the sum of $2,250 of the above-described currency and the wallet containing $80.

8. On January 16, 1946, plaintiff called defendant to plaintiff's office and demanded that defendant deliver the $2,250 and the wallet containing $80 to him, plaintiff, an administrator of John L. Young's estate.

9. Defendant, through counsel, has refused, and still refuses, to deliver to plaintiff any part of the above-described money, but claims ownership of it.

10. Defendant has not made any accounting of John L. Young's interest in the aforesaid partnership.

### Discussion

We think it will be agreed that the testimony in this case presents a most unusual situation. Ordinarily, of course, there could be no question of plaintiff's right to an accounting by defendant, as surviving partner. Section 43 of the Uniform Partnership Act of March 26, 1915, P. L. 18, 59 PS §105, provides:

"The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution in the absence of any agreement to the contrary."

See Underdown, Exec., v. Underdown, 270 Pa. 229, 231. While the answer avers that under the partnership agreement the surviving partner would not be required to render an accounting, the proofs are silent on the point. We must assume, therefore, "the absence of any agreement to the contrary".

However, under the admitted facts of the case, a part of the business of the partnership was conducted in flagrant violation of the penal statutes of this Commonwealth. The part of the partnership business having to do with the sale of cigars, cigarettes, candy and soft drinks, may be assumed to be legal, in the absence of any evidence that such operations were carried on simply as a screen or "front" to conceal the illegal branch of the business. Had there been such proof, we should have declared, unhesitatingly, that the entire business was illegal. It was said many years ago by a learned judge that "the law is not to be hoodwinked

by colorable pretenses; it looks at truth and reality through whatever guise it may assume".

If anything is settled in the law, it is the rule that the law will not enforce an illegal transaction, nor will it be an instrument for distribution of moneys illegally gained. There can, according to the generally accepted doctrine, be no accounting demanded of a partner for the profits which may be in his hands where a partnership is formed for an unlawful purpose, or where it engages in unlawful transactions; nor can a recovery be had: 47 C. J. 651, §44. Our own cases adhere to the general rule, Vandegrift v. Vandegrift, 226 Pa. 254; Tucker v. Binenstock, 310 Pa. 254. Nor is plaintiff in this proceeding in any more enviable position than Young himself would be, if he were living. "It has been held that the heir or personal representative of one of the parties to an illegal contract has no greater right to be relieved from the contract or to enforce it than his decedent had": 13 C. J. 506, §450.

The only question on this phase of the case, then, is whether defendant can be made to account for that part of the partnership business which was legal. There appears to be no Pennsylvania case directly in point. But the general rule seems to be that where a part of the business of a partnership is legal and a part illegal, an account of that which is legal may be had: 47 C. J. 653, §44. See Central Trust & Safe Deposit Co., etc., v. Respass, 66 S. W. 421; Anderson v. Powell, 44 Iowa 20; Fryer v. Harker, 142 Iowa 708, 121 N. W. 526; 23 L. R. A. (N. S.) 488, note.

We conclude, therefore, that plaintiff is entitled to an account of that part of the partnership business which was legal, but not for the part which was illegal, and shall so decree.

Coming to a consideration of plaintiff's right with respect to the $2,250 in suit, it is evident that "This is another of the many controversies which have arisen concerning the relative jurisdiction of the orphans'

court and the court of common pleas where there is a dispute between a decedent's estate and a claimant as to the ownership of personal property": Crisswell's Estate, 334 Pa. 266, 267. If this claim had stood alone, plaintiff would probably have proceeded in the orphans' court, in accordance with the principles laid down so clearly in Keyser's Estate, 329 Pa. 514, and followed in many later cases. But, as plaintiff came into equity on the preceding branch of the case, he relies upon the rule that "equity having jurisdiction as to part of a controversy will round it out and afford full relief": Cella v. Davidson, 304 Pa. 389, 395. After full consideration, however, we are of opinion that our jurisdiction of this part of the case is limited in extent, and that the ultimate question of ownership of this fund must be decided in the orphans' court.

So far as concerns the scope of our present inquiry, there is no dispute as to the material facts. Neither party contends that the $2,250 constituted an asset of the partnership. Admittedly, this money was in decedent's possession at the time of his death. (Paragraph 4 of the bill so alleges, and was admitted in evidence as insufficiently denied. Counsel for defendant also formally admitted possession in decedent at the time of his death.)

"It is a presumption of law that personal property of all kinds found in a person's possession or under his dominion and control at the time of his death belongs to him and constitutes assets of his estate, . . . and it devolves upon anyone claiming any of the property adversely to establish his title": 23 C. J. 1157, §369.

Plaintiff administrator was entitled to the possession of this money upon his subsequent appointment, and Mrs. Chamberlin, in our view, was utterly without authority to deliver it to defendant, or to assume any jurisdiction over it, beyond retaining temporary cus-

tody. Even if decedent did constitute Mrs. Chamberlin his agent to deliver this money to defendant, as it is claimed (a point which we are not competent to decide), her agency was terminated by Young's death. Nothing but chaos would result if creditors and other claimants were permitted to come on to a decedent's personal effects, like a swarm of devouring locusts, and satisfy their demands by a purely ex parte adjudication of their real or fancied claims. We are satisfied that, as this money was in decedent's possession at the time of his death, the jurisdiction of the orphans' court attached, at least preliminarily. By section 9(1) of the Orphans' Court Act of June 7, 1917, P. L. 363, it is provided that the jurisdiction of the several orphans' courts, whether separate or otherwise, shall extend to and embrace "all cases within their respective counties, wherein executors, administrators, guardians, or trustees may be possessed of, *or are in any way accountable for*, any real or personal estate of the decedent".

In Keyser's Estate, 329 Pa. 514, the Supreme Court, after some discussion of the earlier cases, thus summarized the applicable principles governing the jurisdiction of the orphans' court where title to personal property is in dispute:

"(1) The preliminary question for consideration is where the possession of the disputed property was at the time of the decedent's death and thereafter, up to the time of hearing. (2) If the property was in the decedent's possession, either actually or presumptively, at the time of his death, or thereafter, at any time came into the possession of his personal representative, as part of the estate for purposes of administration and ultimate distribution, the jurisdiction of the orphans' court attaches and it may decree or award the disposition thereof, subject to the procedural rule next to be stated. (3) If upon a hearing it so appears, yet a substantial dispute as to title or ownership is shown

to exist between the rival claimants, the orphans' court has no power to try and determine this question, but may submit the issue to the court of common pleas for a trial by jury, under the power conferred by the Act of June 7, 1917, P. L. 363, sec. 21 (a) (20 P.S. sec. 2581) ; the verdict so found, where certified to the orphans' court, may then become the basis of a decree by that court settling the controversy. . . ."

Crisswell Estate, 334 Pa. 266, seems in point. There, a woman claiming to be decedent's widow instituted an action of replevin to recover certain securities contained in a safe deposit box in decedent's name, alleging that, in expectation of his impending death, decedent had delivered to her the key of the box, thereby transferring to her title to the contents. The orphans' court, on petition of a legatee, issued an injunction restraining claimant from further prosecuting the suit in replevin, but permitting her to present to it a petition for the allowance of her claim. On appeal, the action of the lower court was affirmed. The Supreme Court, following Keyser's Estate, supra, held that the securities were presumably the property of decedent, and that the jurisdiction of the orphans' court attached, at least preliminarily. The court said (p. 271) :

"When appellant produces evidence before the orphans' court in support of her claim, that court may conclude that a substantial dispute as to title exists and therefore submit the issue for a trial by jury, but, her possession not being admitted nor reasonably apparent, *the question whether, under the circumstances, a substantial dispute exists is one to be decided by the orphans' court in limine, and appellant cannot short-circuit the case into the court of common pleas merely by pleading facts which, if true, may establish her title, but which are seriously controverted by the executor and a residuary legatee of decedent's estate*". (Italics supplied).

We are of opinion, therefore, that we can only order the return of this money to plaintiff administrator, and that further proceedings with relation thereto must be had in the orphans' court. Our jurisdiction, in short, is limited to a restoration of the status quo, so to speak. " 'The court of common pleas, even as a court of equity, cannot interfere in a matter within the exclusive jurisdiction of the orphans' court' ": Wilson v. Bd. Dir. City Trusts et al., 324 Pa. 545, 557.

The situation before us is not too dissimilar from that presented in Williams' Estate, 236 Pa. 259. In that case, Williams commenced proceedings to recover certain stock from the estate of Edward M. Paxson, deceased. Williams died, and his executrix was substituted upon the record. It was determined that the stock belonged to Williams, and the same was duly transferred to his executrix. After she obtained possession of the stock, the executrix transferred a majority of it to third persons, under the claim that these proportions of the stock belonged to the respective transferees and were not the property of the Williams Estate. Thereupon, certain creditors petitioned the orphans' court for an order on the transferees to restrain them from parting with the shares in question, and for a decree that they should return the stock to the personal representative of Williams, "to await the settlement of said estate". The court directed a reassignment to the executrix, to abide the further order of the court. On appeal, the judgment was affirmed. After pointing out that the stock was presumptively a part of Williams' Estate, by reason of the prior judicial determination, and the fact that the certificate had been actually transferred to his executrix and the stock was physically in the estate, the Supreme Court said (p. 272) :

"Under these conditions, the executrix in the exercise of her discretion attempted to transfer a large part of the stock to the appellants. The asset having

been in the possession of the decedent's estate, and 'presumptively his' (Cutler's Est., supra [225 Pa. 167]), the Orphans' Court had jurisdiction to entertain the petition of anyone with an interest, 'whether such interest be immediate or remote' (Act of 1832, supra ⌊Mar. 29, P. L. 190]), for an order to restore the status quo pending the settlement of the estate, and in such a proceeding the court had authority to investigate the facts. But when it appeared that a substantial dispute existed as to the ownership of the stock, the Orphans' Court could go no further than to restore the status quo; for this purpose it could make an order that the property should be transferred back to the personal representative of the decedent, and thus keep the asset under its control pending a final settlement of the estate or of the disputed question of title. The claimants would then have their choice of 'forum and remedy'. They could 'elect to proceed at common law', or they could 'submit their claim upon distribution proceedings in the Orphans' Court' (Paxson's Est., supra, p. 207 [225 Pa. 204]); should they fail to do either, then the Orphans' Court could treat their claim as abandoned and proceed to distribute the asset; or where the facts call for such a course the court could and should at the proper time direct an issue to the Common Pleas (Cutler's Est., supra, pp. 173-174)."

The situation with respect to the money contained in the wallet, is somewhat different. It is averred in paragraph (4) of the bill, and admitted by insufficient denial in the answer, that Young "customarily kept in his possession at his domicile a wallet or wallets containing sums of money which were used to pay the debts of the said partnership of him and defendant". We take it, then, that the contents of the wallet constituted partnership assets. It would appear, in consequence, that defendant was entitled to this money as liquidating partner.

"When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners": Uniform Partnership Act, sec. 38, 59 PS §100.

For reasons which should be obvious, we think plaintiff is entitled to an injunction permanently restraining defendant from paying gambling debts with the money contained in the wallet, and with any other moneys belonging to the former partnership. The law does not recognize such a thing as a gambling "debt".

### Conclusions of law

1. The court has jurisdiction of the parties and the subject matter of this suit.

2. Plaintiff, as administrator of the estate of John L. Young, deceased, is entitled to an account, as against defendant, of John L. Young's interest in the partnership of the said John L. Young and defendant, as respects that part of the partnership business which related to the sale at retail of cigars, cigarettes, candy and soft drinks.

3. Plaintiff, as administrator of the estate of John L. Young, deceased, is not entitled to an account, as against defendant, of John L. Young's interest in the partnership of the said John L. Young and defendant, as respects that part of the partnership business which related to bookmaking and receiving, registering and recording money bet on horse races.

4. The sum of $2,250 in cash, which was in John L. Young's possession at the time of his death, and which was later removed by defendant, presumably constituted an asset of John L. Young's estate.

5. This court is without jurisdiction to determine the legal title to the said sum of $2,250, and the question of such title must be raised in the orphans' court.

6. This court has jurisdiction to order defendant to deliver the said sum of $2,250 into the custody of plaintiff, as administrator of the Estate of John L. Young, deceased, and plaintiff is entitled to such decree.

7. The cash contained in the wallet, which was in John L. Young's possession at the time of his death, and which was later removed by defendant, constituted an asset of the partnership of John L. Young and defendant, and defendant is entitled to retain said cash, as the liquidating partner.

8. Defendant is without right, as the liquidating partner of said partnership, to use the money contained in the wallet, or any other moneys or assets belonging to the partnership, for the payment of alleged gambling debts, and plaintiff is entitled to an injunction restraining defendant from so doing.

### Decree nisi

And now, November 14, 1946, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. Defendant, Roscoe W. Seiler, as surviving partner of the partnership of John L. Young and Roscoe W. Seiler, is directed to state an account of the interest of the said John L. Young in said partnership, as respects that part of the partnership business which related to the sale at retail of cigars, cigarettes, candy and soft drinks, and any other legal transactions of said partnership.

2. Defendant, Roscoe W. Seiler, is directed to deliver into the custody and possession of H. F. Troutman, administrator of the estate of John L. Young, deceased, the sum of $2,250, which said sum was in the possession of John L. Young at the time of his death, and was removed thereafter from decedent's late residence by defendant.

3. Defendant, Roscoe W. Seiler, is enjoined and restrained from using or diverting any cash, or other assets whatsoever, of the partnership of John L. Young and Roscoe W. Seiler, for the payment or satisfaction of any alleged gambling debts, or other illegal obligations of said partnership.

4. Defendant shall pay the costs of this proceeding.